PAUL J. DUFFIELD, Plaintiff-Appellee, v. MARRA, INC., d/b/a Ramada Inn, Defendant-Appellee (St. Louis Southwestern Railway Company, Defendant-Appellant).

Fifth District   No. 5—87—0050

Opinion filed February 10, 1988.

James C. Cook and Lisa M. Pennock, both of Walker & Williams, P.C., of Belleville, for appellant.

Kenneth A. Slavens and David P. Ellington, both of Brown, James & Rabbitt, P.C., of St. Louis, Missouri, for appellee Marra, Inc.

Glenn E. Bradford, of Morris B. Chapman & Associates, Ltd., of Granite City, for appellee Paul Duffield.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Defendant St. Louis Southwestern Railway Company (the Railroad) appeals from a judgment of the circuit court of St. Clair County which awarded plaintiff, Paul J. Duffield, damages of $35,000, plus costs, on a claim brought against it by Duffield pursuant to the Federal Employers' Liability Act (the FELA or Act) (45 U.S.C.A. §51 *et seq.* (West 1986)). Four issues are presented for our review: (1) whether the circuit court erred in denying the Railroad's motions for a directed verdict and for judgment notwithstanding the verdict; (2) whether there was sufficient evidence to support the jury's finding that Duffield was only 50% contributorily negligent; (3) whether the circuit court erred in dismissing count V of the Railroad's counterclaim against defendant Marra, Inc., d/b/a Ramada Inn (the Ramada Inn), for contractual indemnity and in denying its motion to reinstate that count prior to trial; and (4) whether the circuit court erred in finding that a settlement agreement between Duffield and the Ramada Inn was in good faith within the meaning of the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*). For the reasons which follow, we affirm in part, reverse in part, and remand for further proceedings.

The record established that Duffield was employed by the Railroad as a locomotive engineer. At the time of the events giving rise to this litigation, he was 56 years old and resided in Scott City, Missouri, which is near the Railroad's Illmo terminal.

On the morning of February 4, 1979, the Railroad called Duffield at his home and told him that he was being sent to the Railroad's East St. Louis, Illinois, terminal, where he would be assigned to a train. Transporting Railroad employees from one terminal to another for work assignments in this way is known as "deadheading" and is

used by the Railroad to adjust crew availability to train traffic, which is occasionally heavier at some points along the line than others.

Duffield reported to the Illmo terminal, and at 9 a.m. he was driven in a taxi provided by the Railroad from there to the East St. Louis terminal. For this trip, which was 139 miles long, he was paid approximately 1⅓ days' wages. Duffield arrived in East St. Louis at 11:30 a.m. Once there, he reported to the yard office, registered with the clerk, filled out his time slip and advised that he was available for duty. The Railroad did not need him immediately, however, and he was sent to rest.

According to the evidence, train crew members who are not needed upon arrival at a terminal after being "deadheaded" there are taken to lodgings to rest for four- or eight-hour periods. During this rest period, crew members are on call and can be recalled to work if they are given notice 1½ hours before the rest period ends. They are not paid for the rest period unless they are called back before four hours have elapsed or unless more than 16 hours pass without their being recalled. Nevertheless, they remain subject to the Railroad's disciplinary rules and operating procedures. This means, for example, that they must act in a presentable manner and abstain from consuming alcohol.

The lodgings provided by the Railroad for crews "deadheaded" into the East St. Louis terminal were located at the Ramada Inn in Belleville, Illinois. Rooms were furnished there for the use of the crews pursuant to a written agreement between the Ramada Inn and the Railroad. These rooms were paid for by the Railroad, not individual crew members. Crew members were transported from the Railroad's terminal to the Ramada Inn in a van provided by the motel. Upon arrival, they would simply identify themselves as being with the Railroad and receive their room assignments.

The Railroad apparently sometimes had supervisory personnel at the Ramada Inn to watch over Railroad employees, although this was not the case at the time relevant to this dispute. Railroad workers were free to leave their rooms and the motel itself during rest periods, but if they did so they were required to notify the front desk as to their whereabouts so that they could be reached in the event that they were needed by the Railroad.

Upon being notified that he would not be needed immediately on the morning of February 4, Duffield signed out on the Railroad's call register. That register indicated that Duffield was off duty and would be rested to return to work at 7:30 p.m., eight hours after his arrival. Duffield was then taken by the Ramada Inn's van from the terminal

to the motel.

After checking in at the motel, Duffield went to his room, cleaned up, and returned to the lobby, where he met Wayne Gross and John Killian, two other railroad employees. The trio decided to go out to eat at a restaurant known as Bohannon's, located several blocks from the motel. They could not eat at the motel's coffee shop, because it had closed at 11 a.m. Although another restaurant, Augustine's, was adjacent to the motel and was open, Duffield testified that he did not want to eat there, in part, because he felt that he was dressed inappropriately and because it was too expensive.

The record disclosed that Railroad crews received a meal allowance after being "deadheaded" if certain conditions were met. It further showed that no transportation to restaurants was provided to crews resting at the Ramada Inn unless both the motel coffee shop and Augustine's were closed. Duffield and the others therefore had to go to Bohannon's on foot.

There was no sidewalk leading from the motel, and the three proceeded to Bohannon's across the motel's parking lot. Snow had apparently fallen sometime earlier, and the lot was filled with rough ice or frozen slush. According to Duffield, it appeared as if automobiles had driven through the slush and the slush had then frozen. Gross testified that he saw no evidence that the lot had been plowed or cleared or that any sand or chemicals had been applied to it. No one from the Railroad or the motel was present on the lot, and no warnings were posted or given that surface conditions might be hazardous.

Duffield did observe that the lot was icy and rough, but he was wearing galoshes and had walked on ice before. He did not think that he might break an ankle if he tried to cross it. That, however, is precisely what happened. After proceeding a short distance through the lot, Duffield slipped and fell, breaking his left ankle. He was taken to a local hospital where the ankle was set in a cast.

After returning home to Missouri, Duffield was treated by an orthopedic surgeon, and he was ultimately required to have surgery for his injury. As a result of the injury, Duffield lost more than $25,000 in wages as well as three weeks of vacation time, for which he would have been paid $600 per week. His medical bills exceeded $4,500. Although he was ultimately able to return to work for the Railroad, his ability to walk, to run, and to stand for long periods of time remained impaired. He also carried a scar from the surgery. Medical testimony established that he would probably suffer pain for the rest of his life.

In his complaint, Duffield sought damages for his injuries from the Railroad, the Ramada Inn, and Augustine's. As suggested at the

outset of this opinion, Duffield's claim against the Railroad was based on the FELA. Specifically, Duffield alleged that the Railroad should be held liable to him because, *inter alia*, it had failed to provide him a reasonably safe place to work. Duffield's claims against the Ramada Inn and Augustine's were premised on common law negligence.

The Railroad filed a counterclaim against the Ramada Inn. (See Ill. Rev. Stat. 1985, ch. 110, par. 2—608.) In Count V of that counterclaim, the Railroad asserted that the Ramada Inn was obligated by contract to indemnify it against any liability which it might be held to have for Duffield's injuries. Prior to trial, the Ramada Inn moved to dismiss this count. Its motion was granted, and a subsequent motion by the Railroad to reinstate the count was denied. In addition, the circuit court entered a pretrial order granting summary judgment in favor of Augustine's Restaurant.

On the eve of trial, Duffield settled his claim against the Ramada Inn for $35,000. The cause then proceeded to a jury trial against the Railroad alone. The jury entered a verdict in favor of Duffield. It assessed his damages at $140,000, but found that he was 50% contributorily negligent. It therefore awarded him the sum of $70,000.

Following entry of the jury's verdict, the circuit court determined that Duffield's settlement with the Ramada Inn was reasonable and had been made in good faith. Pursuant to the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*) it therefore entered a judgment which reduced the jury's award against the Railroad by the amount of that settlement. Accordingly, Duffield was left with a damage award of $35,000, plus costs. The Railroad's post-trial motion for judgment notwithstanding the verdict or a new trial was denied, and it now appeals.

As grounds for its appeal, the Railroad first argues that Duffield failed to establish a submissible case against it and that the circuit court therefore erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict. We disagree.

■■ The FELA makes a common carrier engaged in interstate commerce "liable in damages to any person suffering injury while he is employed by such carrier in such commerce *** resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier." (45 U.S.C.A. §51 (West 1986); see *Richardson v. Missouri Pacific R.R. Co.* (8th Cir. 1982), 677 F.2d 663, 665.) To be sure, the Act does not make the railroad an insurer of its employee's safety. (*Schrier v. Indiana Harbor Belt R.R. Co.* (1980), 82 Ill. App. 3d 561, 564, 402 N.E.2d 872, 875.) In order to recover under the Act a railroad employee must show that he was injured as a prox-

imate result of an accident which occurred in the course of his employment by the railroad and due to the railroad's negligence. (82 Ill. App. 3d at 564, 402 N.E.2d at 875.) The quantum of evidence necessary to establish liability is, however, much less in an FELA case than it would be in an ordinary negligence case. (*Hamrock v. Consolidated Rail Corp.* (1986), 151 Ill. App. 3d 55, 61, 501 N.E.2d 1274, 1278.) Under the statute, the test of whether a jury case has been made is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury. *Escher v. Norfolk & Western Ry. Co.* (1980), 82 Ill. 2d 110, 113, 411 N.E.2d 864, 866.

The FELA imposes upon an employer railroad a nondelegable duty to provide its employees with a safe place to work. This is so even when its employees are required to go onto premises of a third party over which the railroad has no control (*Schrier v. Indiana Harbor Belt R.R. Co.* (1980), 82 Ill. App. 3d 561, 564, 402 N.E.2d 872, 875), or onto premises which third persons have a primary obligation to maintain (*Carter v. Union R.R. Co.* (3d Cir. 1971), 438 F.2d 208, 211). Accordingly, the fact that Duffield sustained his injury at the Ramada Inn and not on Railroad property is not, in itself, a bar to his recovery.

The Railroad nevertheless argues that it cannot be held liable to Duffield under the facts present here because Duffield was not acting in the scope of his employment at the time of his injury. This contention is without merit. An employee acts within the scope of his employment not only when he performs actual work, but also when he is engaged in acts incidental to his employment. *Fowler v. Seaboard Coastline R.R. Co.* (5th Cir. 1981), 638 F.2d 17, 20.

As our review of the evidence in this case has shown, Duffield was at the Ramada Inn in Belleville only because he had been sent there by the Railroad. He was provided lodging there at no cost pursuant to an agreement between the Ramada Inn and the Railroad. The purpose of his presence at the motel was to enable him to rest and recuperate so that he would be prepared for work later in the day. While there, he remained on call and was required to advise the front desk of his whereabouts before leaving. He continued to be subject to the Railroad's disciplinary rules and operational procedures.

The Railroad suggests that by leaving the motel and going out for lunch, he was engaged in a "frolic" of his own which was totally unrelated to his employment. The authorities cited by the Railroad do not support this characterization. The proper test for determining whether an act is within the scope of employment for the purposes of

an FELA case is whether "the act was one which the employer might reasonably have foreseen and which the employee might reasonably have thought necessary in the interest of or in the benefit of the employer." (*Fowler v. Seaboard Coastline R.R. Co.* (5th Cir. 1981), 638 F.2d 17, 20.) The Railroad cannot seriously contend that it did not foresee that employees would leave their rooms at the Ramada Inn to take meals during their rest periods. Indeed, it would be unreasonable to expect an employee who is sent to a motel for eight hours of rest would not eat before returning to work. The Railroad provided meal allowances to employees and imposed no restrictions on where meals were eaten. The motel coffee shop had limited hours and the cost of eating at Augustine's apparently exceeded the amount for which the Railroad was willing to reimburse employees. It was therefore also foreseeable that Railroad employees would leave the motel grounds, proceed out across the parking lot and seek food elsewhere. Accordingly, we conclude that Duffield's activities at the time of his injury were necessarily incident to his employment and, hence, within the scope of that employment. As one Federal court has observed:

> "It seems to us that when a railroad provides shelter or food or both for its employees, and they are using the accommodations so provided to prepare themselves for their work, or to rest and recuperate, they must be regarded as in its 'employ.'" *Mostyn v. Delaware, L & W. R.R. Co.* (2nd Cir. 1947), 160 F.2d 15, 17-18, quoted in *Carney v. Pittsburgh and Lake Erie R.R. Co.* (3rd Cir. 1963), 316 F.2d 277, 278, *cert. denied* (1963), 375 U.S. 814, 11 L. Ed. 2d 49, 84 S. Ct. 45.

■ The Railroad further contends that it cannot be held liable because it had no duty to take precautions against the conditions at the Ramada Inn which resulted in Duffield's injury, namely, the accumulation of frozen ice on the parking lot. In support of this claim, the Railroad cites *Stiles v. Panorama Lanes, Inc.* (1982), 107 Ill. App. 3d 896, 438 N.E.2d 241, and *Serritos v. Chicago Transit Authority* (1987), 153 Ill. App. 3d 265, 505 N.E.2d 1034, but those cases are inapposite. Each involved common law negligence principles. The action before us here was brought pursuant to the FELA.

While a plaintiff's *prima facie* case under the FELA must include the same elements as are found in a common law negligence action (*Richardson v. Missouri Pacific R.R. Co.* (8th Cir. 1982), 677 F.2d 663, 665), the law is now settled that the standard of negligence under the FELA is substantially broader than that governing ordinary common law negligence actions (*Nivens v. St. Louis Southwestern Ry. Co.* (5th Cir. 1970), 425 F.2d 114, 118, *cert. denied* (1970), 400 U.S.

879, 27 L. Ed. 2d 116, 91 S. Ct. 121.) Correspondingly, jury verdicts in favor of plaintiffs can be sustained upon evidence that would not support such a verdict in ordinary tort actions. *Caillouette v. Baltimore & Ohio Chicago Terminal R.R. Co.* (7th Cir. 1983), 705 F.2d 243, 246.

■ As we have just discussed, the FELA imposes on an employer railroad a nondelegable duty to provide a safe work place, even when the employees are required to go onto the premises of a third party. This duty has been construed to impose responsibility on the employer to inspect the third-party's property for hazards and to take precautions to protect employees from possible defects. (*Schrier v. Indiana Harbor Belt R.R. Co.* (1980), 82 Ill. App. 3d 561, 564, 402 N.E.2d 872, 875.) Such a duty is separate and distinct from any negligence that may be attributable to the third party. (82 Ill. App. 3d at 564, 402 N.E.2d at 875.) Even if, *arguendo*, the Ramada Inn could not be held liable to Duffield under the authorities cited by the Railroad, Duffield could therefore still bring suit against the Railroad pursuant to the FELA.

■ In our view, the evidence amply demonstrated that the Railroad breached its duty to Duffield here. The Railroad knew or should have known that the employees it had sent to the Ramada Inn might leave the premises to eat or for other purposes, and because there are no sidewalks leading away from the motel, it should have foreseen that the employees would have to walk upon the parking lot. It also knew or should have known the parking lot could become hazardous after snow had fallen and traffic had driven upon it. Had the lot been inspected, the hazard would have been discovered. But it was not, and no precautions were taken to protect the Railroad's employees. Under these circumstances we believe that Duffield made out a submissible case on the issue of the Railroad's negligence. The denial of the Railroad's motions for a directed verdict or judgment notwithstanding the verdict was not error.

■ The Railroad next challenges the jury's determination that Duffield was only 50% contributorily negligent. Under the FELA an employee's contributory negligence is no bar to relief; damages are simply reduced in proportion to the amount of negligence attributable to the employee. (45 U.S.C.A. §53 (West 1986); *Caillouette v. Baltimore & Ohio Chicago Terminal R.R. Co.* (7th Cir. 1983), 705 F.2d 243, 246.) Our review of the jury's verdict on this question must be made in accordance with Federal law. Under Federal law in FELA cases, a jury verdict will be set aside only where there is a complete absence of probative facts to support the conclusion reached. (*Hamrock v.*

*Consolidated Rail Corp.* (1986), 151 Ill. App. 3d 55, 61, 501 N.E.2d 1274, 1278.) Courts "are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." 151 Ill. App. 3d at 61, 501 N.E.2d at 1278, quoting *Tennant v. Peoria & Pekin Union Ry. Co.* (1944), 321 U.S. 29, 35, 88 L. Ed. 2d 520, 525, 64 S. Ct. 409, 412.

In this case, the Railroad challenges the jury's apportionment of damages by reiterating its claim that it had no control over the situs of the accident and breached no duty to Duffield. As our previous discussion has established, however, there was sufficient evidence upon which the jury could reasonably conclude that the Railroad was negligent. The Railroad further suggests that it should not have been held liable because Duffield observed the icy conditions on the parking lot and might have avoided them by cutting through Augustine's Restaurant, which was connected to the Ramada Inn by a tunnel, but decided instead to proceed directly across the parking lot. We agree that there was evidence that Duffield was negligent in acting as he did, but that negligence *was* clearly taken into account by the jury in arriving at its verdict. There can be no dispute that the issue of Duffield's negligence was properly submitted to the jury, and we find no basis for disturbing its finding.

■ While the judgment in favor of plaintiff and against the Railroad must therefore be affirmed, we agree with the Railroad that the circuit court erred in dismissing count V of its counterclaim against the Ramada Inn and in refusing to reinstate that count prior to trial. The Ramada Inn asserts that the count was properly stricken because it pleaded more than one cause of action in one count in violation of section 2—603(b) of our Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—603(b)). This is not so. A fair reading of count V indicates that it was intended to state a claim only for contractual indemnity.

■ The Ramada Inn argues, in the alternative, that the count was properly stricken because the indemnity agreement upon which it is based is unenforceable as a matter of law. This, too, is not so. That agreement was contained in the contract which set forth the terms pursuant to which the Railroad leased rooms from the motel. It provided that the Ramada Inn was obligated:

> "To protect, defend and save Railroad harmless from all actions, claims, demands, costs and expenses that may be asserted against it for loss of or damage to property and for injuries or deaths of any persons arising or resulting directly or

indirectly from use and occupancy of said rooms by employees of Railroad."

Promulgation of the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 et seq.) has not affected the "validity of explicit undertakings among two or more parties to shift from one party to another the ultimate cost of liability which may arise in favor of a third party." (See *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 27, 495 N.E.2d 496, 497.) The Ramada Inn nevertheless asserts that the agreement here must fail because it does not comport with the requirements which must be met in order for a party to exculpate itself from its own negligence. The flaw in this analysis is that that is not really what the Railroad is attempting to do at all. Duffield's injuries were actually caused by the acts or omissions of the Ramada Inn. The Railroad's liability is merely constructive or derivative. It is based simply on its nondelegable duty to provide its employees with a safe place to work. Thus, the Railroad is not seeking to require the Ramada Inn to shoulder the liability for the Railroad's negligence, but to take responsibility for its own wrongdoing.

■■ In any case, we believe that the indemnity agreement in question here was sufficient. The Ramada Inn correctly observes that an indemnity contract will not be construed as indemnifying one against his own negligence unless such a construction is required by clear and explicit language of the contract, or such intention is expressed in unequivocal terms. (*Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 67, 294 N.E.2d 272, 273.) It is not necessary, however, that specific reference to indemnification against liability arising out of the indemnitee's negligence be provided for in the agreement. (*Ahlvers v. Terminal R.R. Association* (1975), 31 Ill. App. 3d 166, 171, 344 N.E.2d 329, 333.) The agreement must be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions. In our view the indemnity clause here was meant to cover liability for injuries sustained by the Railroad's employees at the Ramada Inn under the circumstances present here. (See *Lohman v. Morris* (1986), 146 Ill. App. 3d 457, 461, 497 N.E.2d 143, 146; *Rios v. Field* (1971), 132 Ill. App. 2d 519, 522, 270 N.E.2d 98, 101; *Deel v. United States Steel Corp.* (1969), 105 Ill. App. 2d 170, 184-85, 245 N.E.2d 109, 116.) The circuit court therefore erred in dismissing and in refusing to reinstate count V of the Railroad's counterclaim against the Ramada Inn.

The Railroad's final claim on appeal is that the circuit court erred in finding that the settlement between plaintiff and the Ramada Inn was in "good faith" within the meaning of the Contribution Act (Ill.

Rev. Stat. 1985, ch. 70, par. 301 *et seq.*). In light of our conclusion that the Railroad had a valid claim against the Ramada Inn for contractual indemnity, this argument need not be reached. Regardless of whether the settlement was made in good faith, the Contribution Act would not discharge the Ramada Inn from liability to the Railroad given the terms of the indemnity agreement.

For the foregoing reasons the judgment of the circuit court of St. Clair County is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

WELCH and LEWIS, JJ., concur.