ROGER FICKEN, Plaintiff-Appellee, v. ALTON AND SOUTHERN RAILWAY COMPANY, Defendant-Appellant.

Fifth District No. 5—95—0338

Opinion filed May 21, 1996.

Thomas E. Jones and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellant.

Jon Carlson, of Carlson, Wendler & Sanderson, P.C., of Edwardsville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff, Roger Ficken, brought this action under the Federal Employers' Liability Act (45 U.S.C.A. § 51 (West 1986)) (FELA) to recover damages allegedly caused by defendant Alton & Southern Railway Company's negligence in failing to provide a reasonably safe place to work. The jury returned a verdict for Ficken. We affirm.

Alton & Southern operates a switching railroad. Freight railroads bring their trains to the Alton & Southern yard where the trains are broken up into individual cars. The individual cars are switched to different tracks according to destination and then compiled into new trains. When a train is broken up into individual cars, the cars roll by their own momentum to the proper track. Gaps between cars on a track are created if one car rolls farther down the track than the car behind it or when cars hit one another but do not couple. It is necessary to close the gaps between cars so that all the cars that should be on that track can fit. The closing of the gaps between cars to make room for more cars is called trimming.

Ficken worked for Alton & Southern as a switchman. His job was to direct the movement of the train engine, which moved the cars to the appropriate tracks, by giving the engineer hand signals on when and how to move the engine and when to stop. Once it is determined that all the gaps between cars are closed, the switchman directs the engineer to speed up.

On March 8, 1989, an accident occurred while Ficken was working as a switchman on track 62. Ficken had looked down the track to see how many gaps between cars had to be closed. It was important to know the number of gaps so that the men on the engine would know how many jolts to anticipate when the cars were being shoved into contact with other cars. Ficken testified that on March 8, 1989, he saw three gaps in the 15 car lengths he could see. After Ficken felt the third gap close, he directed the engineer to accelerate to a faster speed. The engine traveled about one car length at the faster speed and ran into an unexpected cut of cars. The collision brought the engine to an abrupt stop, and Ficken was swung around and hit his right side against a metal plate on the engine.

Ficken's accident occurred at approximately 11:15 p.m. At 5 a.m., Ficken complained of a sharp pain in his ribs and was taken to the emergency room, where he was given pain medication. About three weeks later, on March 29, 1989, Ficken sought medical attention from chiropractor Dr. Timothy Hackney for lower back pain. Dr. Hackney diagnosed a lumbar sprain injury with a radicular component involving the right hip and thigh area, and he treated Ficken for four visits. Ficken's supervisor suggested that Ficken consult a company doctor. Dr. Cynthia Byler, the company doctor, examined Ficken and referred him to Dr. Sayed Ali, a neurologist. Dr. Ali ordered an MRI and diagnosed acute and chronic low back pain. Dr. Ali treated Ficken with physical therapy and pain medication and kept him off work.

On May 30, 1989, Ficken saw Dr. George R. Schoedinger III, a

physician Ficken was referred to by his attorney. Dr. Schoedinger ordered a myelogram, which showed a ruptured disk at the L4-L5 level. Dr. Schoedinger left the decision on whether to have surgery up to Ficken. On October 10, 1990, Ficken was admitted to the hospital for surgery. On March 1, 1991, Dr. Schoedinger released Ficken to work with no restrictions.

This case was first heard on appeal in *Ficken v. Alton & Southern Ry. Co.*, 255 Ill. App. 3d 1047, 625 N.E.2d 1172 (1993) (*Ficken I*). *Ficken I* remanded the case for a new trial because the cumulative effect of several errors by the trial court denied Ficken a fair trial on the first trial.

At the conclusion of the second trial, judgment was entered on the jury verdict finding for Ficken against Alton & Southern for $483,440. Alton & Southern appeals from the November 18, 1994, judgment, arguing: (1) the court erred in denying Alton & Southern's motion for judgment notwithstanding the verdict, and (2) defendant was denied a fair trial.

## JUDGMENT NOTWITHSTANDING THE VERDICT

Alton & Southern first argues that the court erred in not granting its motion for judgment notwithstanding the verdict (judgment *n.o.v.*). *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967), sets out the standard for entering a judgment *n.o.v.*:

"In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand."

When reviewing a court's denial of a motion for judgment *n.o.v.*, the reviewing court should apply the same standard that was applied at the trial level, and not reweigh the evidence. *Johnson v. National Super Markets, Inc.*, 257 Ill. App. 3d 1011, 1015, 630 N.E.2d 934, 937 (1994). In FELA cases, a jury verdict will be set aside only where there is a complete absence of probative facts to support the conclusion reached. *Duffield v. Marra, Inc.*, 166 Ill. App. 3d 754, 762, 520 N.E.2d 938, 944 (1988). The reviewing court is limited to the inquiry of whether the conclusion may be drawn that the negligence of the employer played any part whatsoever in the plaintiff's injury. *Harrison v. Chicago & Northwestern Transportation Co.*, 264 Ill. App. 3d 857, 863, 637 N.E.2d 454, 459 (1994). We conclude that the trial court properly denied the motion for judgment *n.o.v.*

The FELA imposes upon an employer railroad a nondelegable duty to provide its employees with a safe place to work. *Duffield*, 166

Ill. App. 3d at 760, 520 N.E.2d at 942. In order to recover under the FELA, a railroad employee must show that he was injured as a proximate result of an accident which occurred in the course of his employment by the railroad and due to the railroad's negligence. *Duffield*, 166 Ill. App. 3d at 759-60, 520 N.E.2d at 942. The evidence necessary to establish liability in a FELA case is much less than in an ordinary negligence case. *Duffield*, 166 Ill. App. 3d at 760, 520 N.E.2d at 942. Under the statute, a plaintiff need only show that defendant's negligence played a part, even the slightest part, in producing plaintiff's injury. *Duffield*, 166 Ill. App. 3d at 760, 520 N.E.2d at 942.

■ In this case, the jury was instructed that Alton & Southern was negligent in that it:

"(a) Failed to provide a safe place to work;

(b) Failed to provide safe conditions for work;

(c) Required crews to move cars without first coupling them together, in violation of the company's own rules;

(d) Required crews on the trim job to shove in the blind;

(e) Eliminated the job of 'bull ring man' when the company knew or should have known that this absence created an increased hazard to crews and equipment;

(f) Failed to establish clear safe procedures for performing the trimming maneuver;

(g) The engineer operated the locomotive at a speed in excess of four (4) miles per hour."

The jury found that Ficken should be awarded $638,204 in damages, not taking into account any fault. The jury found Ficken 24.25% negligent and the total damage award was reduced to $483,440. The evidence presented at trial supports the judgment entered on the verdict in favor of Ficken and against Alton & Southern. The verdict was supported by probative facts, and the court did not err in denying Alton & Southern's motion for judgment *n.o.v. Duffield*, 166 Ill. App. 3d at 754, 520 N.E.2d at 938.

## USE OF THE HARCROS DEPOSITION

Alton & Southern's second argument is that several errors occurred during trial which denied Alton & Southern a fair trial. We will first address Alton & Southern's argument that the court erred in excluding the use of a deposition Ficken gave in another case.

In May of 1992, Ficken gave a deposition in a lawsuit brought by his union against Ficken's former employer (the Harcros deposition). Ficken was represented by counsel during the deposition, but not by the counsel who represented him in this case. Alton & Southern wanted to use portions of the Harcros deposition in this case to

impeach Ficken. Alton & Southern argued that the Harcros deposition revealed that a doctor had suggested back surgery to Ficken before the accident that is the basis for this case. After the first trial in this case, Ficken sent Alton & Southern supplemental interrogatories, which requested Alton & Southern to "supplement and bring up to date all of your answers to prior interrogatories filed in this case and directed to you."

Prior interrogatory number three was disputed by the parties:

"State whether *you or anyone acting in your behalf has obtained from the Plaintiff*, any witness, or from any person, *any oral or written statement*, account, report, memorandum or testimony concerning the accident involved in this cause of action, including the events leading up to and/or following the accident, and if so:

(a) state the name and last known address of each of said persons;

(b) state when, where and by whom each statement, account, report, memorandum, or testimony was made;

(c) state whether oral or written;

(d) state whether it was signed or witnessed; and if so, by whom was it signed or witnessed? Give the names and addresses of all persons present;

(e) state the name and address of the custodian of each statement, account, report, memorandum or testimony." (Emphasis added.)

Related to this interrogatory was Ficken's motion *in limine* number 12, which sought to preclude "[a]ny statements or comments that surgery was suggested to Plaintiff on his back previous to this injury."

During a pretrial conference regarding motions *in limine*, the following exchange occurred:

"THE COURT: *** [Motion *in limine*] [n]umber twelve.

MR. JONES: That is totally irrelevant, the fact that in [Ficken's] prior injury he was recommended to have surgery and he didn't have it.

MR. CARLSON: Where was he recommended to have surgery?

THE COURT: If you have such a proof, I would allow it.

MR. JONES: And we will have the proof.

MR. CARLSON: If you have it, you had better produce it to me.

THE COURT: Let's put it this way. I'm going to overrule him, but with proof.

MR. JONES: It is in your client's own testimony, Jon. Your client has testified to it. You can talk to your client about it. He's sitting here in the courtroom.

MR. CARLSON: If you have some medical documents or some

medical records where there is surgery or that he recommended it. I've been through his testimony, and it is not there.

MR. JONES: It is.

THE COURT: You show it to me.

MR. JONES: I will.

\* \* \*

THE COURT: With respect to items ten and twelve, the Court is allowing motions in limine. If you come up with something, you can run it past me later. What else do you have?"

Ficken argues that Alton & Southern "was engaged in a classic example of trial by ambush" because the pretrial conference at which the motion *in limine* excerpted above was discussed occurred on November 7, 1994, and counsel for Alton & Southern did not produce the Harcros deposition until immediately preceding Ficken's testimony which occurred on November 14, 1994, the fourth day of the trial. Therefore, according to Ficken, the court was correct in preventing the use of the Harcros deposition.

Alton & Southern argues that the interrogatory submitted by Ficken did not encompass Ficken's deposition in the Harcros case. In fact, Alton & Southern forcefully criticizes Ficken for not turning over the Harcros deposition to Alton & Southern himself, rather than letting Alton & Southern find it by accident. In addition, Alton & Southern argued that the court did not order it to immediately hand over the information but instead specifically told Alton & Southern that it could give the court the information at a later time.

■ The trial court has discretion in deciding whether a motion *in limine* should be granted, and a reviewing court will not reverse the trial court's order absent a clear showing of an abuse of that discretion. *Sher v. Deane H. Tank, Inc.*, 269 Ill. App. 3d 312, 317, 645 N.E.2d 1046, 1049 (1995).

■ In this case, the court granted Ficken's motion *in limine* preventing Alton & Southern from using the Harcros deposition to impeach Ficken and to show that a doctor suggested back surgery to Ficken before this injury. The court considered the language of interrogatory number 3 and affirmed its prior ruling on the issue, stating, "I give [the language] broad general application." Although interrogatory number 3, when given a broad interpretation, would require Alton & Southern to disclose the Harcros deposition, we are not limited to interrogatory number 3. A court of review may affirm a trial court's judgment upon any grounds appearing in the record, regardless of whether it was relied upon by the trial court and regardless of whether the reasoning of the trial court was correct. *Wilder v. Finnegan*, 267 Ill. App. 3d 422, 426, 642 N.E.2d 496, 500 (1994).

Without specifically ruling on interrogatory number 3, the basis of the trial court's decision, we hold that the court correctly allowed Ficken's motion *in limine* because Alton & Southern failed to update another one of the interrogatories. Interrogatory number 12 asked:

"Do you or your attorney or insurance carrier have any information tending to indicate any of the following:

(a) that the Plaintiff was within five (5) years immediately prior to or subsequent to said occurrence, confined in a hospital, *treated by a physician* or x-rayed for any reason and if so, state the names and addresses of the hospital, physician, and x-ray;

(b) that the Plaintiff ever filed any other suit or made any other claim for his own personal injuries. If so, state the court in which filed, the year filed, and the title and docket number of said cases or the date, location, and nature of claims made." (Emphasis added.)

Alton & Southern should have disclosed the Harcros deposition under interrogatory number 12(a) because the deposition provided information about when Ficken was treated by a physician for an injury which occurred in January 1984. The occurrence at issue in this case, the accident at Alton & Southern, occurred on March 8, 1989. Ficken was treated for the January 10, 1984, accident for several months afterwards. Therefore, we hold the court did not err in sanctioning Alton & Southern's actions by granting Ficken's motion *in limine* to prevent Alton & Southern from introducing the Harcros deposition into evidence at trial. *Holton v. Memorial Hospital*, 274 Ill. App. 3d 868, 655 N.E.2d 29 (1995); *Boettcher v. Fournie Farms, Inc.*, 243 Ill. App. 3d 940, 612 N.E.2d 969 (1993).

## ADMISSION OF EVIDENCE ABOUT THE TRIMMING PROCEDURE

Alton & Southern next argues that the court erred in admitting evidence of certain hazards associated with the trimming job when those hazards did not contribute to Ficken's injury. Ficken argues that the evidence was introduced to show that Alton & Southern had notice of the general danger of the trimming procedure. Alton & Southern insists that the evidence was introduced to show the willfulness of defendant's conduct in allegedly disregarding the dangerousness of trimming in general and not the specific circumstances in this case.

■ The trial court has discretion to determine what evidence is relevant, and its decision will not be disturbed on review unless it is found that the trial court abused its discretion. *Hartman v. Pittsburgh Corning Corp.*, 261 Ill. App. 3d 706, 723, 634 N.E.2d 1133, 1145 (1994). The reviewing court should not be concerned with whether it agrees

with the lower court's decision but should determine whether the court acted arbitrarily without conscientious judgment or whether the court exceeded the bounds of reason and ignored established legal principles resulting in substantial prejudice. *In re Marriage of Aud*, 142 Ill. App. 3d 320, 326, 491 N.E.2d 894, 898 (1986).

■ In this case, the evidence supports the court's admission of evidence of other trimming accidents which occurred at Alton & Southern. One of Ficken's central claims in this case was that the trimming method utilized by Alton & Southern in 1989 was dangerous. This evidence went to show that Alton & Southern had notice that the procedure was dangerous. Therefore, the court did not err and we affirm the court's ruling.

## USE OF SAFETY COMPLAINTS MADE AFTER THE ACCIDENT

Alton & Southern next argues that it was denied a fair trial because the court erred in admitting plaintiff's exhibits numbers 4, 5, 9, 10, 11, 13, 14, and 20, which were safety complaints made to Alton & Southern. Alton & Southern argues that Ficken incorrectly cross-examined the railroad superintendent, Floyd Cooper, using these exhibits. Before addressing this issue, we must address whether Alton & Southern preserved this issue for appeal.

Ficken argues that Alton & Southern waived this issue by not objecting to the admission of the evidence at trial. The record shows that Alton & Southern did not object to the use of the safety complaints when Ficken's attorney used the documents to cross-examine Floyd Cooper. However, Alton & Southern did object to the admission of the documents into evidence and to the fact that the safety complaints did not impeach Floyd Cooper. In addition, the following exchange occurred between Alton & Southern's attorney and the judge:

"THE COURT: I don't know that [the safety complaints] hurt you. I don't see any relevance.

MR. JONES: Exactly. That's the point. Here they come in, and they say we're going to use these for impeaching Cooper. Cooper took the stand. Don't say that didn't have roll-outs. He didn't say anything inconsistent with those documents. And none of those indicate anything to do with this—

THE COURT: Here is the thing. He testified to them for whatever purpose. I'll admit them. But the jury heard their testimony to them, and I don't know that it was damaging to the defendant."

■ To preserve an issue for review, a party must make the appropriate objections in the trial court or the issue will be waived.

*Gausselin v. Commonwealth Edison Co.*, 260 Ill. App. 3d 1068, 1079, 631 N.E.2d 1246, 1254 (1994). The party must state specific grounds for any objections, and other grounds not stated are waived on review. *Gausselin*, 260 Ill. App. 3d at 1079, 631 N.E.2d at 1254. The purpose of these requirements is to allow the trial court an opportunity to properly consider the objection and rule on it. *Gausselin*, 260 Ill. App. 3d at 1079, 631 N.E.2d at 1254.

■ In this case, Alton & Southern's attorney did not make a specific objection to the admission of the safety complaints based on their relevancy, but his response to the court that is quoted above was sufficient to preserve his position that the reports were irrelevant. The question then becomes, were the reports relevant? The trial court apparently felt that the reports were not particularly harmful to Alton & Southern, and the court also questioned their relevance. It appears to us that exhibits numbers 10, 11, 13, 14, and 20, which dealt with reports of rollouts before Ficken's injury, were relevant and that exhibits numbers 4, 5, and 9, which dealt with reports of rollouts after his injury, were not. The reports of rollouts before Ficken's injury were relevant in establishing Ficken's theory that the trimming method used by Alton & Southern was not reasonably safe and at least technically violated its own safety rule 103(i):

> "Before coupling to or moving cars or engines, it must be known that they are properly secured and can be coupled and moved safely."

Therefore, the trial court properly admitted exhibits 10, 11, 13, 14, and 20. Although the trial court erred in admitting exhibits 4, 5, and 9, they were similar to the properly admitted exhibits and were merely cumulative. Therefore, we conclude that the trial court's error on these three exhibits does not warrant reversal.

## EVIDENCE THAT FICKEN COULD NOT RETURN TO WORK

Alton & Southern next argues that the court erred in allowing evidence that Alton & Southern refused to let Ficken return to work and further erred by not allowing Alton & Southern to explain why Ficken was not allowed to return to work.

Alton & Southern filed motion *in limine* number 17, which requested that the court:

> "[E]xclude matters preempted by the Federal Railway Labor Act such as (a) *termination* or suspension; (b) hearing or investigation process; (c) work place 'harassment'; (d) overwork; (e) 'unfair' treatment." (Emphasis added.)

Alton & Southern argued that plaintiff's exhibit number 22 should be excluded as part of this motion *in limine*. Plaintiff's exhibit number 22 was a letter from Floyd Cooper, Ficken's superintendent, stating in pertinent part:

"After having been advised of your physical condition as described under oath in Roger Ficken vs. The Alton & Southern Railway Company case, we have carefully reveiwed [sic] both the pleadings and transcript of testimony and based on that review, have determined that you are permanently disabled from your injuries and unable to return to work as a Switchman."

The court denied this portion of Alton & Southern's motion *in limine*.

■ Alton & Southern contends that the court erred in allowing Ficken's attorney to make reference to plaintiff's exhibit number 22 during his opening statement, while questioning Ficken, and in his closing statement. Ficken argues that Alton & Southern should not be allowed to argue this issue on appeal because no timely objection was made.

Failure to make a timely objection at trial to alleged errors is waiver of the objection. *Ellington v. Bilsel*, 255 Ill. App. 3d 233, 238, 626 N.E.2d 386, 389 (1993). Alton & Southern argues that it made the motion *in limine* to exclude matters preempted by the Federal Railway Labor Act, including "termination." Furthermore, argues Alton & Southern, immediately after Ficken introduced evidence that Alton & Southern stopped its work-hardening program and told Ficken he was not to return to work, Alton & Southern's attorney objected to the questioning. We do not believe that under these circumstances Alton & Southern waived its right to appeal this issue. However, we affirm the decision of the court.

When ruling on Alton & Southern's motion *in limine*, the following exchange occurred:

"MR. JONES: *** Our contention is any claims that he has for labor disputes are handled by an arbitration proceeding and is [sic] handled outside of an [sic] FELA context. He's not in here trying to recover money damages as a result of any labor dispute or grievance. He has a labor dispute or grievance available to him.

THE COURT: You cannot keep that from coming into evidence.

MR. JONES: Sure we can.

THE COURT: Overruled.

MR. JONES: Overruled. So we know what we're referring to.

THE COURT: I'll allow this in.

MR. JONES: For the record, what you just stated, you're not going to keep out, you're referring to.

THE COURT: I would allow this in the record.

MR. JONES: This is, it's not marked as an exhibit at this point, but it is a letter dated September 25, 1991 from Floyd Cooper to Mr. Roger Vetter [sic].

MR. CARLSON: We do have it marked as an exhibit.

THE COURT: That's what I was afraid you would get in. Something like that comes in.

MS. SANDERSON: That would be Exhibit 22, Your Honor.

THE COURT: If you have a labor grievance, that is something else.

MR. JONES: He did file a labor grievance. It went up on appeal, and he abandoned it on appeal.

THE COURT: This may be offered for a number of other things. That's the problem with that.

MR. CARLSON: It is an admission among other things.

THE COURT: I've ruled on it."

 We hold that the court did not err in denying Alton & Southern's motion *in limine* number 17 because the exhibit at issue was an admission by a party-opponent. Any oral or written out-of-court statement by a party to the action, or attributable to a party, which tends to establish or disprove any material fact in a case is an admission and is competent evidence against that party in the action. *Werner v. Botti, Marinaccio & DeSalvo*, 205 Ill. App. 3d 673, 679, 563 N.E.2d 1147, 1152 (1990). In addition, a statement of an agent, when made in the exercise of his duties and pertaining to matters within the scope of his authority, may constitute an admission binding on the principal which can be introduced as substantive evidence against the principal. *Werner*, 205 Ill. App. 3d at 679, 563 N.E.2d at 1152.

In this case, plaintiff's exhibit number 22 was a letter signed by Floyd Cooper, Ficken's superintendent. Mr. Cooper's duties included handling Alton & Southern's personnel. The letter was written in the exercise of Cooper's duties, pertained to matters in the scope of his authority, and was clearly relevant to this case. Therefore, we affirm the court's decision to deny Alton & Southern's motion to exclude the letter written by Cooper. *Werner*, 205 Ill. App. 3d at 673, 563 N.E.2d at 1147.

## FICKEN'S 1993 INCOME RECORDS

 Alton & Southern next argues that the court erred in excluding evidence that the plaintiff was off work in 1993 due to a shoulder injury. During trial, Ficken used his 1993 income figure as the basis for his future earning capacity. Alton & Southern wanted to establish that this income amount was inaccurate, by introducing evidence showing that in 1993 Ficken was off work at Sam's Warehouse one month due to a rotator-cuff injury. The court denied Alton & Southern's request to cross-examine Ficken's expert economist on this issue.

The trial court has discretion to exclude evidence not directly re-

lated to a central issue of the case if the confusion of issues resulting from its admission would not be compensated for by its usefulness in the trial. *Reynolds v. Alton & Southern Ry. Co.*, 115 Ill. App. 3d 88, 97, 450 N.E.2d 402, 409 (1983). In this case, we hold that the court did not err in preventing Alton & Southern from cross-examining Ficken's expert economist about Ficken's 1993 injury. The trial could have been more complicated if Alton & Southern had been allowed to introduce medical evidence about Ficken's 1993 injury. Alton & Southern believed that Ficken's absence from work was due solely to a rotator-cuff injury. In contrast, Ficken argues that the rotator-cuff injury aggravated the back injury, making Ficken's absence from work even longer. The court did not err in wanting to prevent a trial of this collateral issue within the trial itself; therefore, we affirm.

## CONTRIBUTORY NEGLIGENCE INSTRUCTION

▪ Alton & Southern next argues that the court erred in failing to instruct the jury on Alton & Southern's charges of contributory negligence. Alton & Southern's proposed instruction number 9, based on Illinois Pattern Jury Instructions, Civil, No. 160.02 (3d ed. 1991), claimed that Ficken was contributorily negligent in one or more of the following respects:

"(a) He directed the engineer to kick or drift cars without first ascertaining whether such movement could be performed safely;

(b) He failed to have a full understanding of the movement he was intending to make in that he did not properly ascertain whether the track was sufficiently clear for the safe operation and movement of the locomotive;

(c) He directed the engineer to move the locomotive in a westerly direction without first ascertaining whether the intended movement could be performed safely;

(d) He directed the engineer to increase the speed on the engine in order to kick cars, without first ascertaining whether it was safe to move in the direction of travel.

(e) He failed to properly position and brace himself on the locomotive in order to protect himself from anticipated contact with rail cars while attempting to close the gap in the track."

The court allowed subsections (a) and (e) and denied the others. Alton & Southern argues that the court erred in not allowing subsections (b) and (c) because they are separate and distinct from subsection (a). Ficken argues that subsections (b) and (c) are duplicative of subsection (a).

It is within the trial court's discretion to determine what instruction shall be given, and the court's decision will not be disturbed on review unless it has been clearly abused. *Clarkson v. Wright*, 121 Ill.

App. 3d 230, 232, 459 N.E.2d 305, 307 (1984), *rev'd on other grounds*, 108 Ill. 2d 129, 483 N.E.2d 268 (1985). We hold that the court did not abuse its discretion by not allowing subsections (b) and (c) of Alton & Southern's instruction.

## AGGRAVATION OF A PREEXISTING CONDITION INSTRUCTION

■ Alton & Southern's final argument is that the court erred in instructing the jury to give Ficken a separate award for the aggravation of a preexisting condition. This issue was decided in *Ficken I*, in which this court held that the trial court erred in refusing to give Illinois Pattern Jury Instructions, Civil, No. 30.03 (2d ed. 1971), which provides that a proper element of damage is "[t]he aggravation of any pre-existing ailment or condition." Alton & Southern has raised this issue in the appeal of the second trial.

Although Alton & Southern argues that Ficken's attorney asked for an award of $200,000 for the element of aggravation of a preexisting condition, that amount or more was asked for each of the other elements. The verdict was a general verdict of $638,204 in total damages, and we are unable to determine the value the jury allocated to each element. Therefore, it is impossible to determine if Alton & Southern was prejudiced by the inclusion of aggravation as a separate element of damages.

In addition, the law-of-the-case doctrine applies to this situation. Under this doctrine, we are bound by the particular views of law announced in our prior opinion in a case between the same parties, unless the facts presented require a different interpretation. *Sanders v. Shephard*, 258 Ill. App. 3d 626, 632, 630 N.E.2d 1010, 1016 (1994), *aff'd*, 163 Ill. 2d 534, 645 N.E.2d 900 (1994). The parties and issues to this appeal are the same as in the first appeal, so the law-of-the-case doctrine requires that we affirm *Ficken I. Sanders*, 258 Ill. App. 3d at 626, 630 N.E.2d at 1010. However, we are not sure that we would reach the same conclusion if we were to visit this issue anew.

For the foregoing reasons, we affirm.

Affirmed.

KUEHN and MAAG, JJ., concur.