SIXTH DIVISION

FILED: 03/31/99

No. 1-97-3208) Consolidated.

        1-97-3637)

JOSEPH McNIFF, ) Appeal from the 

) Circuit Court of

Plaintiff, ) Cook County.

)

)

)

)

MILLARD MAINTENANCE SERVICE CO., and )

JMB PROPERTIES URBAN CO., et al. )

)

Defendants. )

)

___________________________________________ ) 91 L 19804

)

JMB PROPERTIES URBAN CO., )

)

Counter-plaintiff/Appellee )

)

v. )

) 

MILLARD MAINTENANCE SERVICE CO., )

) Honorable

Counter-defendant/Appellant. ) Susan Zwick,

) Judge Presiding.

MODIFIED UPON DENIAL OF REHEARING

JUSTICE ZWICK delivered the modified opinion of the court:

In the underlying action, plaintiff, Joseph McNiff, was injured when he slipped on debris and fell in a stairwell at a commercial building located in Chicago at 900 N. Michigan Avenue. He filed a personal injury action seeking to recover damages against the property’s manager, JMB Properties Urban Company (JMB), and its janitorial service, Millard Maintenance Service Co. (Millard). At the time of his fall, plaintiff was working as an electrical contractor in the building which was partially under construction. He, along with the other construction workers, were required to use the stairway to get to and from the job site. A jury made a finding of approximately $750,000 in damages and apportioned fault 34% against JMB, 33% against Millard, and 33% against plaintiff. 

Subsequently, JMB pursued a counterclaim against Millard, seeking indemnity under the written agreement which existed between them. On motion for summary judgment, the trial court found that JMB was entitled to be indemnified from Millard for its 34% share of the net verdict. Accordingly, the court entered judgment on the counterclaim for JMB and against Millard in the amount of $255,399.50, but found that  JMB was not entitled to recover from Millard the attorney’s fees and costs which JMB incurred in its defense of the action. Millard appealed the indemnity award and JMB cross-appealed from the court’s refusal to order Millard to pay its attorney’s fees and costs.

The issue presented is whether the agreement between Millard and JMB required Millard to indemnify JMB for payments it made to satisfy its proportionate share of the plaintiff’s judgment.  In addition, we are asked to determine whether the same agreement required Millard to engage an attorney to defend JMB at trial and pay associated litigation costs. We need not reach the other issues raised by the parties on appeal in light of our resolution of these central questions.

Plaintiff’s specific allegation was that while performing his duties as an employee of MGM Electric Company, an unrelated entity, he was required to enter and exit the building through an employee entrance called "stairway H." While in that stairway, he tripped over a discarded beverage can and sustained injuries. He alleged, 
inter alia, 
that Millard had been negligent in failing to remove the can and that JMB was negligent in failing to provide sufficient light in the stairwell.

In its first amended counterclaim against Millard, JMB alleged that it and Millard had entered into a contract wherein Millard agreed to perform general cleaning services at 900 N. Michigan Avenue and indemnify JMB for any liability arising from the work. The agreement contained the following relevant provision:

“INDEMNIFICATION. Contractor [Millard] hereby agrees and covenants to protect, defend, indemnify and hold harmless [the] Owner, [its] Agent [JMB], and their representatives, officers, employees, and directors from and against any and all claims, actions, liabilities, losses, damages, costs and expenses relating to any and all claims (including, without limiting the foregoing, claims for injury to or death of persons or damage to property) allegedly or actually arising out of or incidental to the Work, including, without limiting the foregoing, all acts and omissions of the officers, employees and agents of Contractor or any of its subcontractors.”

Millard moved for summary judgment on JMB’s counterclaim for contractual indemnity, in part, on grounds that the agreement, although sufficiently clear to require indemnity for damages incurred due to Millard’s negligence in performing work under the agreement, was insufficient to require Millard to indemnify JMB for its own negligence. The court denied the motion, ruling that the indemnity agreement was sufficiently specific to require Millard to indemnify JMB.  JMB then brought its own motion for summary judgment, contending that the agreement not only included indemnification for payments made by JMB to the plaintiff, but also for its attorney’s fees and costs incurred in defending itself at trial. As we have noted, the trial court denied this motion.

By filing cross-motions for summary judgment, the parties invite the circuit court to decide the issues presented in the action as questions of law. 
Allen v. Meyer, 
14 Ill. 2d 284, 152 N.E.2d 576 (1958). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 1996); 
Carruthers v. B.C. Christopher & Co., 
57 Ill. 2d 376, 313 N.E.2d 457 (1974). In reviewing summary judgment, we apply a 
de novo 
standard of review. 
In re Estate of Hoover, 
155 Ill. 2d 402, 615 N.E.2d 736 (1993).

Turning to the merits, we first address JMB’s assertion that the words included in the agreement “allegedly or actually arising out of or incidental to the Work” include claims such as those brought by the plaintiff against JMB.

It is well settled in Illinois that indemnity contracts are strictly construed. In this regard, Illinois courts have consistently held that indemnification contracts will not be construed as indemnifying against a party's own negligence unless such construction is required by clear and explicit language of the contract, or such an intention is expressed in unequivocal terms.
 
This has been the rule in Illinois since 
Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp., 
395 Ill. 429, 70 N.E.2d 604 (1946).

In 
Westinghouse, 
the parties were involved in the reconstruction of certain elevators. One of the appellee’s employees, an elevator repairman, was fatally injured by falling material created by the negligence of one of the appellant’s employees. The question at issue was whether the contract language between the repair company and the building owner who had employed the negligent employee covered the worker’s compensation claims which arose from the accident. The indemnity agreement contained the following language:

“The contractor further agrees to indemnify and hold the owner, the owner’s employees and agents, the Architects and Engineers, and the City of Chicago, wholly harmless from any damages, claims, demands, or suit by any person or persons arising out of any acts or omissions by the Contractor, his agents, servants or employes [sic] in the course of any work done in connection with any of the matters set out in these specifications.” 
Westinghouse, 
395 Ill. at 432. 

The court, in resolving the issue, indicated that an agreement to indemnify a party for his own negligence would be so unusual and extraordinary as to require that the contract put the intent to indemnify “beyond doubt by express stipulation.” 
Westinghouse, 
395 Ill. at 434, citing 
Perry v. Payne, 
217 Pa. 252, 66 A. 553 (1907). Because the above-quoted language failed to meet this test, the court rejected the building owner’s indemnification claim.

The rationale of the 
Westinghouse 
decision has been consistently followed by the supreme court. In 
Tatar v. Maxon Construction Co., 
54 Ill. 2d 64, 294 N.E.2d 272 (1973), for example, the court considered the case of a plaintiff who was an employee of a third-

party defendant, Freesen Brothers Inc. (Freesen). The plaintiff was injured and filed suit against Maxon Construction Co., the general contractor in charge of the construction project. Maxon filed its third-party complaint against Freesen seeking indemnity pursuant to the following agreement:

“The Subcontractor [Freesen] agrees to indemnify the General Contractor [Maxon] and the Principal and to hold each of them forever harmless from and against all expenses, claims, suits, or judgments of every kind whatsoever, by or on behalf of any person, firm or corporation, by reason of, arising out of, or connected with, accidents, injuries, or damages, which may occur upon or about the Subcontractor’s work.” 
Tatar, 
54 Ill. 2d at 66.

Freesen’s motion to dismiss the third party complaint was granted and the appellate and supreme courts affirmed.

In 
Zadak v. Cannon, 
59 Ill. 2d 118, 319 N.E.2d 469 (1974), Sunbeam filed its third-party complaint against Cyclone based upon indemnification language in a purchase order. The trial court ruled that the language was broad enough to indemnify Cyclone for its own negligence and granted summary judgment based upon the following contract language:

“seller [Cyclone] also will indemnify and hold harmless the buyer [Sunbeam] of and from any and all suits, claims, liens, damages, taxes or demands whatsoever arising out of any such work covered by, necessitated or performed under this order.” 
Zadak, 
59 Ill. 2d at 119. 

Once again, based upon 
Westinghouse, 
the supreme court reversed and ruled that the indemnity provision did not contain such clear and explicit language to require that Sunbeam be indemnified for damages brought about by its own negligence. 
Zadak, 
59 Ill. 2d at 121.

Our appellate decisions are not as consistent, but similar principles are at work. In 
Halperin v. Darling & Co., 
80 Ill. App. 2d 353, 225 N.E.2d 92 (1967), for instance, the plaintiff entered into a written truck-leasing agreement with defendant. Defendant agreed to lease a truck to plaintiff and agreed to maintain the brakes of the truck in good operating condition. Plaintiff was injured when he was in an accident caused by brake failure. A relevant provision of the contract provided:

“Lessee [plaintiff] further agrees to reimburse Lessor [defendant], save Lessor harmless from and indemnify Lessor from any loss or liability whatsoever with respect to or arising out of or in the course of the operation of any truck leased hereunder during the term that this lease shall be applicable to any such truck.” 
Halperin, 
80 Ill. App. 2d at 356. 

Defendant moved to dismiss the complaint alleging that, pursuant to the agreement, plaintiff agreed to indemnify it from any and all liability. Plaintiff responded by maintaining that the provision for indemnity did not provide for indemnity against defendant’s own negligence. The trial court rejected the plaintiff’s contention and granted the defendant’s motion.

The appellate court, in resolving the issue, reversed. It held that although contracts of indemnity against one’s own negligence are generally regarded as valid and enforceable, the unusual nature of such a contract requires that the agreement be strictly construed against the indemnitee. 
Halperin, 
80 Ill. App. 2d at 356-57. Relying upon 
Westinghouse, 
the court held that the indemnity contract failed to indemnify the lessor for its own negligence. 
Halperin, 
80 Ill. App. 2d at 357. 

We find that, as in 
Westinghouse, 
the indemnifying language here is not so clear, specific and unequivocal as to require indemnification of JMB for its own negligent conduct. This is particularly true where the plaintiff included within his complaint allegations that the stairwell in which he fell was not properly lighted and where the jury apparently imposed liability thereon. It is undisputed that Millard had no responsibilities for the maintenance of the stairwell lights. Thus, JMB’s suggested interpretation of the contract would require Millard to reimburse JMB for the existence of a condition over which Millard had no responsibility or control. It is difficult to understand why such an outcome would have been intended by the parties at the time they executed the agreement since such a provision would have cast Millard as an insurer of the conditions in the stairwell. Such ambiguity in the agreement is to be construed most strongly against JMB because it is clearly the party for whose benefit the provision was inserted. 
See In re Estate of Corbin, 
105 Ill. App. 2d 120, 125, 245 N.E.2d 117 (1969).

We have carefully reviewed the cases relied upon by JMB in arguing that the indemnity provision is sufficiently clear and unambiguous. We determine, however, that they are not controlling. In 
Hader v. St. Louis Southwestern Railway Co., 
207 Ill. App. 3d 1001, 566 N.E.2d 736 (1991), for example, the issue involved an indemnity agreement between two railroad companies. The two companies specifically agreed that each would be responsible for its own property damage and injury to its own employees. Thus, the counter-defendant was entitled to summary judgment on the indemnity claim as the injury occurred to the counter-plaintiff’s employee. 
Hader, 
207 Ill. App. 3d at 1011. This case presents no such language.

In 
Duffield v. Marra, Inc., 
166 Ill. App. 3d 754, 520 N.E.2d 938 (1988), an employee was injured at a hotel while resting there before his shift as a railroad employee. The hotel had an agreement with the railroad to have rooms available for rest periods. The hotel also agreed to indemnity the railroad for injuries that occurred to the employees while using the hotel. In holding that the indemnity agreement was valid, the court held that the railroad was not seeking indemnity for its own negligence, but rather, was seeking indemnity for the hotel’s wrongdoing. 
Duffield, 
166 Ill. App. 3d at 764. Here, on the other hand, JMB is seeking indemnity for its own negligence which makes the 
Duffield’s 
holding distinguishable.

Nor do the cases relied upon by the trial court support affirmance.  
See e.g., Argueta v. Baltimore & Ohio Chicago Terminal Railroad, 
224 Ill. App. 3d 11, 586 N.E.2d 386 (1991); 
Burlington Northern Railroad Co. v. Pawnee Motor Service, Inc., 
171 Ill. App. 3d 1043, 525 N.E.2d 910 (1988); 
Allen v. International Harvestor Co., 
212 Ill. App. 3d 655, 571 N.E.2d 773 (1991). In each of these cases, the indemnification language at issue was quite different than that now at issue.

In 
Arguenta, 
for example, an injury occurred to one of the plaintiff’s employees and the question was whether the contractor agreed to indemnify for injuries caused by the contractor’s employees. The indemnity language specifically provided that the contractor agreed to indemnify for injuries “caused by or resulting in any manner from any acts, omissions or 
negligence of the contractor.” Arguenta, 
224 Ill. App. 3d at 24 (emphasis added).

Similarly, in 
Burlington Northern Railroad, 
the plaintiff was employed as a truck driver by Pawnee and was injured on Burlington’s railway premises. Plaintiff filed suit against Burlington which in turned filed an indemnity claim against Pawnee. The question involved was whether Pawnee had agreed to indemnify Burlington for any negligence of Burlington. The indemnity language at issue provided that Pawnee would indemnify for “any and all loss, liabilities, damages, claims demands *** whether any of the same should be contributed to by the 
sole or partial negligence of Railway 
[Burlington], its officers, employees, servants, and agaents or otherwise.” 
Burlington Northern Railroad, 
171 Ill. App. 3d at 1044-45 (emphasis added).

Finally, in 
Allen, 
there was clear indemnifying language covering the indemnitee’s own negligence. Plaintiff, an employee of FCS, was injured while loading freight into an International Harvester trailer. Plaintiff filed suit against International Harvestrer which, in turn, filed a third-party complaint for contractual indemnity against FCS. The issue was whether FCS had agreed to indemnify International Harvester for any injuries caused by the negligence of International Harvester. The court answered the question affirmatively, based on clear and explicit contractul language which provided that “FCS shall protect, indemnify, hold and save harmless [International Harvester] *** against all claims *** regardless of whether said loss, damage, injury or death should be 
caused by the negligence of 
[
International Harvester].” Allen, 
212 Ill. App. 3d at 657 (emphasis added). 

In light of our determination regarding the failure of the agreement to clearly require the indemnification of JMB for JMB’s own negligence, we need not address Millard’s claims regarding the applicability of the 
Construction Contract Indemnification for Negligence Act  740 ILCS 35/1 (West 1992)
, public policy, or whether the facts adduced at trial establish that the plaintiff’s injury did not arise out of Millard’s services.

We now turn to JMB’s counterclaim. JMB asserts that it is entitled to reimbursement of its attorney’s fees and costs based upon the above-quoted contract provision, specifically, that portion which states that Millard would “protect, defend, *** and hold [JMB] harmless *** from and against any and all claims, actions, liabilities, losses, damages, costs and expenses relating to any and all claims.” JMB emphasizes the use of the word “defend” in the agreement, arguing that Millard’s obligation to defend it from plaintiff’s allegations necessarily included providing the legal services necessary to rebuff McNiff’s suit.

We agree that the use of the word “defend” in the agreement requires Millard to protect JMB against the allegations of plaintiff’s suit relating to Millard’s work. It is well established that whether such a duty is triggered depends solely upon the allegations in plaintiff’s pleadings. 
Bedoya v. Illinois Founders Insurance Co., 
293 Ill. App. 3d 668, 674, 688 N.E.2d 757 (1997). McNiff’s complaint alleges, among other things, that his fall was caused by debris in the stairwell and that it was Millard’s duty under the contract to keep the premises, including Stairway H, clear of such trash. We find that regardless of the events at trial, as long as the allegations in the pleadings potentially exposed JMB to liability, Millard was obligated to “defend” JMB. Pursuant then to the clear terms of the agreement, Millard was obligated to retain attorneys to defend any claims filed against JMB relating to Millard’s negligence and ensure that the costs of such representation was met. There is no dispute that Millard refused to hire attorneys to defend JMB and did not pay any of the fees and litigation expenses required to meet the allegations of plaintiff’s claims. As such, we remand the case to the trial court to determine the reasonable damages caused by Millard’s breach.

In its Petition for Rehearing, Millard has argued that we must address the question of whether the indemnity agreement was void under the provisions of the Construction Contract Indemnification for Negligence Act, 740 ILCS 35/1 (West 1992), also known as the Anti-Indemnity Act. Millard asserts that if the agreement is void it cannot have required it to defend JMB. Our review of Millard’s brief, however, shows that the statute was raised only alternatively to the argument that the agreement was not sufficiently specific as to require indemnification. We have fully addressed that issue, finding in favor of Millard. In any event, as the circuit court recognized it its Memorandum Opinion and Order, the “maintenance” that Millard contracted to do was actually general cleaning work and not “maintenance of a building” as contemplated by the Act. Accordingly, the agreement was not made void by application of the Act.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed. The matter is remanded to the trial court for further proceedings consistent with this modified opinion.

REVERSED AND REMANDED. 

BUCKLEY, J. and QUINN, J., concur.