Era Smart, Plaintiff, *v.* International Harvester Company, Defendant and Third-Party Plaintiff-Appellant.—(Anchor Steel and Conveyor Company, Third-Party Defendant-Appellee; Mechanical Handling Systems, Inc., Third-Party Defendant.)

(No. 74-411;

Third District—October 30, 1975.

Bozeman, Neighbour, Patton & Noe, of Moline (John V. Patton, of counsel), for appellant.

Califf, Harper, Fox, & Dailey, of Moline (William H. Dailey, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Era Smart, an employee of Mechanical Handling Systems, Inc., was injured on August 1, 1968, in the course of his employment on the premises of the Farmall Plant of International Harvester Company, hereafter referred to as International, located in Rock Island, Illinois. Smart's employer was a subcontractor of Anchor Steel and Conveyor Company, hereafter called Anchor. Anchor had previously entered into a purchase order contract with International for the installation of an overhead trolley conveyor system at the Rock Island plant. Smart was injured while employed on this construction project when a tractor fender fell from the overhead conveyor system that had been installed.

As a consequence of his injury Smart brought suit against International. After demanding indemnity from Anchor and tendering the defense of the same to Anchor, International settled with Smart for $27,500. International brought an action as third-party plaintiff against Anchor, the third-party defendant, seeking indemnity under a provision of the contract entered into between them on February 7, 1968. Both the third-party plaintiff and third-party defendant filed motions for summary judgment as to the question of liability under the indemnity provision contained in their contract for the construction of the overhead conveyor. The trial court granted the motion of Anchor for a summary judgment and denied the same motion made by the third-party plaintiff, Inter-

national. In entering an order thereon the trial court recited that there was no just reason to delay enforcement or appeal of the order.

This appeal followed raising as the only issue for review whether the trial court properly interpreted the contract indemnity provision between the parties. Contained in the contract between the appellant, International, and Anchor was an indemnity provision drawn by International which was an attempt to protect them against all claims arising out of the construction project at their plant including their own negligent acts. The actual terms of the written contract provision are not in dispute. Since the meaning and legal effect of the terms used in that indemnity clause are disputed, we set out the clause in full:

> "INDEMNITY. The Contractor agrees to protect, indemnify, save and hold harmless the Owner, its Subsidiaries, its officers, agents and employees, from and against all losses, costs and expenses, and from and against all claims, demands, suits and actions for damages, losses, costs and expenses, and from and against all liability awards, judgments and decrees; of whatever nature for any and all damage to property of others and of the parties hereto their officers, agents and employees, and of whatever nature for any and all injury or injuries (including death) to any person or persons (including the officers, agents and employees of the parties hereto) growing out of the work; resulting from, arising or in any way growing out of any of the acts or omissions either of the Owner, the Owner's officers, agents or employees, or of any subcontractor of the Contractor, the subcontractor's officers, agents or employees, in connection with the performance of the work under this contract."

The term "owner" in the contract refers to International and the term "Contractor" is synonymous with Anchor.

From the facts detailed ir the record it appears that Anchor had not entirely completed the proposed construction when the injury to Smart occurred. In fact Anchor's work had already extended beyond the scheduled completion date recited by the contract. The testimony indicated that International made a management decision to operate the conveyor even though the project was not fully completed. Testimony was also offered to show that International designed a protective screen for the conveyor which, although installed as a safety measure, failed to prevent the injury to Smart. Additionally the testimony of Richard Fleming, the International employee who initially operated the new conveyor, was that he was instructed by his supervising foreman not to stop the conveyor under any circumstances. This witness admitted that

he saw the tractor fender strike a "tote box" which was stock-piled extremely close to conveyor causing the fender to become twisted on its hook so that it went through an opening at the top of the conveyor sideways in such a fashion that it became lodged in the opening. Mr. Fleming testified that a "jerking" of the conveyor occurred shortly before the fender fell indicating that it had in fact become lodged because it was too wide to pass through the opening, twisted sideways as it was. The witness admitted he could have stopped the conveyor when he became aware of the fact that the fender had become twisted sideways on its trip up the conveyor but did not do so because of his supervisor's orders even though several minutes elapsed before the fender actually fell. In total the evidence was sufficient to suggest a finding that International was negligent and was the proximate cause of the injury to Smart.

Nevertheless, International contends on appeal that the indemnity provision in its contract with Anchor contemplates that Anchor will hold International harmless even for International's own negligent acts. The issue which is determinative of this appeal is whether the idemnity clause quoted from the parties contract is broad enough in language to cause Anchor to indemnify International from its own negligent acts.

■■ Express contracts of indemnity against the consequences of one's own negligence were previously upheld in Illinois. In recent years, however, the Illinois courts have applied rules of strict construction to contracts of indemnity against one's own negligence and have refused to uphold the validity of such agreements in the absence of precise and express covenants. As the court stated in *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.*, 395 Ill. 429, 433, 70 N.E.2d 604, 607 (1946), "It is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such construction is required by clear and explicit language of the contract." Consistent with this trend the Illinois legislature, in 1971, specifically provided that such indemnity contracts were against public policy and wholly unenforcable. Section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1971, ch. 29, § 61) which became effective September 23, 1971, provides:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable."

Subsequent to its effective date that statute was held to apply prospectively to contracts entered into after September 23, 1971. *Zadak v. Cannon*, 17 Ill.App.3d 74, 307 N.E.2d 605, *reversed on other grounds*, 59 Ill.2d 118, 219 N.E.2d 469 (1974).

The standard set out in the *Westinghouse* case, that a contract to indemnify one against his own negligence must contain explicit language or an unequivocal expression of such intent to be effective, has been reiterated in cases following the enactment of said section 1 (Ill. Rev. Stat. 1971, ch. 29, § 61) even though the statute was not applied. *Tatar v. Maxon Construction Co.*, 54 Ill.2d 64, 294 N.E.2d 272 (1973); *Zadak v. Cannon*.

International's contention, that the indemnity provision, here, is clear, unambiguous and broad enough to indemnify it against liability for its own negligence, is without merit. In the case of *Tatar*, and more recently in *Zadak*, the Illinois Supreme Court rejected the same argument on the same issue under facts *very* similar to the present case. International's attempts to distinguish the cases are unconvincing.

■■ The indemnity clause in the instant case does not expressly or unequivocally provide for indemnification against International's own negligence. Appellant has failed to satisfy the standard set forth in *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.*, which has since been consistently applied in Illinois. The language of the indemnity provision used in the purchase order contract requires that the injury *grow out of the work* and that the injury *grow out of the acts of a party in connection* with the *performance of the work* contemplated in the contract. If International intended to have "mere physical presence" be the standard for indemnification it should have stated it in clear language in the purchase order. As the Supreme Court noted in *Tatar v. Maxon Construction Co.* "The only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions." (54 Ill.2d 64, 67.) Obviously each case depends upon the particular language used and the facts of the case.

Clearly the negligent acts of International in carrying on production line manufacturing work is unrelated to the construction "work under the contract" to be performed by Anchor and therefore not intended to be included in the broad language of this indemnity clause. A fair and reasonable interpretation of the contract provisions demonstrates that the parties intended not only the presence of an injured worker on International's premises but also that the act causing the injury be directly connected with and a part of the construction work being performed

under the contract to fall within the indemnity agreement. The act which caused the injury was not directly connected to the work being performed under the contract but was production line work and not within the risks contemplated by the parties in their indemnity agreement. Accordingly the reasoning expressed by our Supreme Court in the *Tatar* and *Zadak* cases in construing similar indemnity provisions is controlling.

The intention to include within the indemnity agreement protection to International for their own negligent acts occurring on production line work and not on the actual construction work being performed by Anchor is not so clearly and unequivocally expressed to be given effect.

For the foregoing reasons the judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

STOUDER and ALLOY, JJ., concur.