LEO D. ALLEN, Plaintiff, v. INTERNATIONAL HARVESTER COMPANY *et al.*, Defendants and Third-Party Plaintiffs-Appellants (Van Craft Industries, Inc., *et al.*, Third-Party Defendants-Appellees).

First District (4th Division)   No. 1—90—1825

Opinion filed March 28, 1991.—Rehearing denied May 8, 1991.

Arnstein & Lehr, of Chicago (Louis A. Lehr, Jr., Arthur L. Klein, and John T. Wagener, of counsel), for appellant Navistar International Transportation Corporation.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Steven M. Puiszis, and Bruce L. Carmen, of counsel), for appellee Freight Consolidation Services, Inc.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Navistar International Transportation Corporation, successor in interest to International Harvester Company, filed a third-party action to enforce a contractual indemnity provision between it and third-party defendant, Freight Consolidation Services, Inc. (FCS). Navistar sought to enforce the indemnity agreement following a lawsuit filed against it by one of FCS's employees who was injured while loading freight into an International Harvester trailer. FCS filed a motion to dismiss Navistar's complaint, arguing that the occurrence that formed the basis for the underlying negligence suit brought by FCS's employee was not within the scope of the indemnity agreement. The trial court dismissed Navistar's complaint and Navistar follows with this appeal.

The plaintiff in the underlying action, Leo Allen, was an employee of Freight Consolidation Services, Inc. In his complaint, Allen alleged he was injured at the FCS freight terminal while loading freight into a trailer supplied by International Harvester. Allen alleged that at the time of the injury he was using a forklift truck to load pallets of freight into the trailer. Affixed to the interior walls of the trailer were devices known as decks. The decks could be lowered and raised by a chain and latch to accommodate the loading of freight onto them. As Allen pulled the chain of one of the decks to position it for loading, the latch gave way and the deck fell onto him. Allen asserted that his injury was the proximate result of International Harvester having equipped or maintained the deck with a defective latch; failing to inspect the proper working order of the deck and latch or doing so

carelessly and negligently; and improperly maintaining the deck and latch.

The work that Allen was performing at the time he was injured was being done pursuant to a freight consolidation contract between Navistar's predecessor in interest, International Harvester, and FCS. Under the terms of the freight consolidation agreement, FCS agreed to consolidate, store, handle, and distribute International Harvester's freight in the FCS terminal. As the shipper, International Harvester was to have sole control of all transportation used in conjunction with FCS's services and the right to designate and redesignate the carrier or carriers used to transport the freight. The trailer involved in plaintiff Allen's injury had been leased by International Harvester from Ryder Truck Rental, Inc., a codefendant in the underlying suit.

Also under the terms of the consolidation agreement between International Harvester and FCS, FCS agreed to an indemnity clause which reads in pertinent part as follows:

> "Consolidator, [FCS], shall protect, indemnify, hold and save harmless the Shipper [International Harvester], *** against all claims *** and expenses of whatsoever nature for loss or damage to property of, or for injury or death to, any person or persons, (including the person and property of [International Harvester] and/or [FCS] and/or the person or property of their respective employees *** and all other persons) resulting in any manner, directly or indirectly, from the services to be performed hereunder by [FCS], its employees, agents, *** and regardless of whether said loss, damage, injury, or death shall be caused by the negligence of [International Harvester]."

In its third-party complaint, Navistar alleged that if Allen was successful in securing a judgment against Navistar, then the language of the indemnity clause of the freight consolidation agreement required FCS to indemnify Navistar for the judgment.

FCS moved to dismiss Navistar's complaint, arguing in pertinent part that under the standard enunciated in *Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604, the indemnity agreement between International Harvester and FCS did not provide clearly and unambiguously for the circumstances under which plaintiff Allen was injured. FCS argued that Allen's injury arose out of his contact with defective equipment, a risk it alleged was not contemplated under the terms of the indemnity agreement. FCS characterized plaintiff Allen's activity at the time of his injury as mere presence in the Navistar trailer. Citing to *Burlington Northern R.R. Co. v. Pawnee Motor Service, Inc.* (1988), 171 Ill.

App. 3d 1043, 525 N.E.2d 910, FCS argued that because the contractual language in the indemnity agreement did not at the least specify the "mere physical presence" of the injured employee on Navistar's property, Navistar could not in this case enforce the indemnity contract. The trial court granted FCS's motion to dismiss and Navistar follows with this appeal.

■ We believe that the trial court erred in dismissing Navistar's claim for indemnity against FCS. In interpreting a contract for indemnity, the courts must give the agreement a fair and reasonable interpretation based upon a consideration of the agreement as a whole. (*Smart v. International Harvester Co.* (1975), 33 Ill. App. 3d 241, 337 N.E.2d 68.) While the indemnity provision must be strictly construed (*Owens v. Midwest Tank & Manufacturing Co.* (1989), 192 Ill. App. 3d 1039, 549 N.E.2d 774), each case also depends upon the language and facts of that particular case. Bearing these standards in mind, we believe that the scope of the indemnity agreement between Navistar and FCS clearly embraces the circumstances which allegedly caused the injury to plaintiff Allen. See *Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604; *Burlington Northern R.R. Co. v. Pawnee Motor Service, Inc.* (1988), 171 Ill. App. 3d 1043, 525 N.E.2d 910.

The parties do not disagree that the indemnity agreement provides for instances in which FCS would be obligated to indemnify Navistar for Navistar's own negligence. Nor do they dispute that Allen in his suit against Navistar intends to allege a cause of action in negligence. It is FCS's argument that any negligence in the present case arose not out of the performance of the consolidated freight contract *per se*, but resulted rather from Navistar's negligence in maintaining its equipment, a circumstance FCS asserts was not contemplated by the indemnity agreement. FCS characterizes Allen's status at the time of the injury as one of "mere physical presence" in the International Harvester trailer, a situation not specifically covered under the terms of the indemnity agreement.

This case presents an issue similar to the issue addressed by the court in *Burlington Northern R.R. Co. v. Pawnee Motor Service, Inc.*, 171 Ill. App. 3d 1043, 525 N.E.2d 910. Accepting the fact that the indemnity agreement provides for FCS to indemnify Navistar even in cases of Navistar's own negligence, the question becomes what limitations, if any, are imposed on Navistar's acts of negligence.

In *Burlington*, the injury to the indemnitor Pawnee's employee occurred when the employee was on the indemnitee Burlington's premises for the purpose of picking up a tractor-trailer pursuant to an

agreement between Pawnee and Burlington. While conducting a required inspection of the vehicle, the employee fell into a hole and suffered injuries. The court determined that the negligence alleged by Pawnee's employee against Burlington was covered by an indemnity agreement between Burlington and Pawnee that specified that Pawnee was to indemnify Burlington for occurrences involving Burlington's own negligence. The *Burlington* court pointed out that the scope of the agreement included, as part of those general circumstances triggering Pawnee's duty to indemnify, acts caused by reason of the presence of Pawnee's employees on Burlington property.

The court also reasoned, however, in response to Pawnee's argument that the agreement failed to specify "defects in the premises" that the case of *Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (395 Ill. 429, 70 N.E.2d 604), did not stand for the proposition that in order to be effective, an indemnity provision must state the specific acts of negligence to be covered. The *Burlington* court concluded that *Westinghouse* stands for the general rule that where the parties intend that the indemnity agreement will encompass the indemnitee's own negligence, the language so stating must be clear and unequivocal, a condition the *Burlington* court determined had been met in the case before it.

■■ ■ Like the court in *Burlington*, we do not believe that the holding in *Westinghouse* requires that in order to be effective an indemnity agreement must specify the cause of the injury. We therefore do not accept the suggestion in FCS's argument that the agreement between Navistar and FCS is not enforceable in this case because the agreement addressed only injury caused by Navistar's negligence and not injury caused by Navistar's negligence in maintaining its equipment.

■■ We also do not believe, as FCS argues, that to be effective in this case the agreement must have at least contained a reference to the injured's physical presence on the indemnitee's property. In support of this argument, FCS relies heavily on the case of *Smart v. International Harvester Co.* (1975), 33 Ill. App. 3d 241, 337 N.E.2d 68, a case in which the indemnity agreement under scrutiny contained neither an express covenant to indemnify against the indemnitee's own negligence, nor a provision covering the injured's "mere physical presence" on the indemnitee's property. (See *Smart v. International Harvester Co.*, 33 Ill. App. 3d at 245, 337 N.E.2d at 71.) The agreement in *Smart* did address itself to injuries growing out of the acts of a party in connection with the performance of the work contemplated in the contract. The *Smart* court determined, however, that this lan-

guage was insufficient to cover an injury that resulted from the indemnitee's operation of a conveyor system on which construction was not yet complete. The injured plaintiff in the case was an employee of the construction company indemnitor. He was injured when an object fell off of the overhead conveyor striking him. The court in *Smart* concluded that a fair and reasonable interpretation of the indemnity provision in question demonstrated that the parties intended that the act causing the injury be directly connected with and a part of the construction contract work being performed by the indemnitor.

In the present case, in addition to the clear and unambiguous language whereby FCS agreed to indemnify Navistar for Navistar's own negligence, the indemnity agreement between FCS and Navistar provided that FCS would indemnify Navistar for injuries resulting in any manner "directly or indirectly" from the services to be performed under the contract. According to the allegations in plaintiff Allen's complaint, he was injured while he was in the process of loading freight into the International Harvester trailer. It is undisputed that the loading of freight into trailers was a service encompassed within the freight consolidation contract between FCS and International Harvester. Allen further alleged that, in order to position one of the trailer decks for loading, he pulled on the deck chain. It was at this point that the latch gave way and the deck fell and injured him. Under the circumstances Allen has outlined, we are not persuaded, as FCS argues, that Allen was "merely present" in International Harvester's trailer. Rather, we believe that at the time he was injured Allen was, at the very least, indirectly involved in the performance of a service required under Navistar and International Harvester's freight consolidation agreement.

■ We believe that taken as a whole, the indemnity agreement between Navistar and FCS is enforceable against FCS: the agreement clearly and unequivocally provides for FCS to indemnify Navistar for Navistar's own negligence, and the situation under which Allen's injury arose falls within the circumstances outlined in the agreement.

■ In further argument, FCS urges us to affirm the trial court's dismissal of Navistar's complaint, at least to the extent Navistar prays for FCS to indemnify Navistar based upon Navistar's agreement to indemnify Ryder Truck Rental. In support of this argument, FCS cites only to *Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (395 Ill. 429, 70 N.E.2d 604), and makes the general statement that indemnity clauses must be strictly and narrowly construed. The issue as we see it is whether FCS must indemnify Navistar for any contractual obligation Navistar assumed in its

dealing with Ryder. The *Westinghouse* proposition does not bear on this issue of FCS's relation to Navistar as Navistar relates to Ryder.

For the foregoing reasons, we believe that the trial court erred in dismissing Navistar's claim for indemnity against FCS. The judgment of the circuit court is accordingly reversed and the cause is remanded for further proceedings.

Reversed and remanded.

LINN and McMORROW, JJ., concur.