# Illinois Official Reports

## Appellate Court

*933 Van Buren Condominium Ass'n v. West Van Buren, LLC*, 2016 IL App (1st) 143490

| | |
|---|---|
| Appellate Court Caption | 933 VAN BUREN CONDOMINIUM ASSOCIATION, an Illinois Not-for-Profit Corporation, Plaintiff, v. WEST VAN BUREN, LLC, an Illinois Limited Liability Company; GLENN RUTLEDGE, an Individual; ROGER K. MANKEDICK, an Individual; ROSEMARY GODEK, an Individual; LENNAR CHICAGO, INC., Successor by Merger to Concord Homes, Inc., d/b/a Lennar; ILLINOIS ROOF CONSULTING ASSOCIATES, INC., an Illinois Corporation; and TOTAL ROOFING AND CONSTRUCTION SERVICES, INC., Defendants (West Van Buren, LLC, an Illinois Limited Liability Company, Counterplaintiff-Appellant and Cross-Appellee; Total Roofing and Construction Services, Inc., and Illinois Roof Consulting Associates, Inc., an Illinois Corporation, Counterdefendants-Appellees and Cross-Appellants). |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-3490 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Rehearing denied<br>Opinion filed | June 16, 2016<br><br>July 27, 2016<br>July 27, 2016<br>September 8, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-8267; the Hon. Eileen O'Neill Burke, Judge, presiding. |

| Judgment | Affirmed in part and reversed in part; cause remanded. |
| --- | --- |
| Counsel on Appeal | Shawn M. Doorhy, Trina K. Taylor, and Colby A. Kingsbury, all of Faegre Baker Daniels LLP, of Chicago, for appellant. |
| | Hughes Socol Piers Resnick & Dym, Ltd., of Chicago (Donald G. Peterson, of counsel), for appellee Total Roofing & Construction Services, Inc. |
| | Anne L. Blume, Bryan J. Johnson, and Cozen O'Connor, all of Chicago, for appellee Illinois Roof Consulting Associates, Inc. |
| Panel | JUSTICE HOWSE delivered the judgment of the court, with opinion. Presiding Justice Ellis and Justice McBride concurred in the judgment and opinion. |

## OPINION

¶ 1    Real estate developer-appellant West Van Buren, LLC (WVB), hired two roofing contractors, Illinois Roof Consulting Associates, Inc. (IRCA), and Total Roofing & Construction Services, Inc. (Total), to perform roofing work on a condominium building it was constructing in Chicago. After the building was completed and had been turned over to the condominium home owner's association, 933 West Van Buren Condominium Association (HOA), the HOA discovered that the condominium roof was leaking and subsequently filed a lawsuit against WVB.

¶ 2    WVB filed counterclaims against IRCA and Total arguing that they had a duty to defend and indemnify WVB pursuant to their respective contracts and that they breached this duty by refusing to defend and indemnify WVB against the HOA's claims. Total filed a claim for contribution against IRCA and WVB. Following a settlement between the HOA and WVB, all that remained pending before the trial court were claims the developer and contractors filed against each other. The trial court granted IRCA's and Total's motions for summary judgment on WVB's indemnification counterclaims, finding that IRCA and Total did not have a duty to defend or indemnify WVB for the HOA's underlying claims pursuant to their contractual agreements. WVB timely filed this appeal from those rulings. Total also filed a cross-appeal challenging the trial court's dismissal of its claim for contribution; however, Total did not make any argument on appeal regarding its cross-appeal. For the reasons that follow, we reverse that part of the trial court's ruling that found IRCA and Total had no duty to defend WVB against the HOA's claims of breach of warranty and breach of the implied warranty of habitability under the indemnity provisions of their respective contracts and remand this matter to the trial court for further proceedings consistent with this opinion. We affirm the trial court's

dismissal of WVB's counterclaims against IRCA and Total with respect to IRCA's and Total's duties to indemnify WVB against fraud claims alleged by the HOA. Finally, Total did not raise any arguments on appeal regarding its cross-appeal of the dismissal of its counterclaims for contribution, thus waiving those claims. Therefore, we affirm the dismissal of those claims.

¶ 3                                    I. Background

¶ 4        The record shows that in 2002, WVB caused a condominium building to be constructed at 933 West Van Buren Street in Chicago, Illinois, on property that WVB owned. WVB hired numerous contractors to perform the construction work, including IRCA to provide roof consulting services and Total to perform the actual roof installation work.

¶ 5        The contract between WVB and IRCA, dated November 15, 2001, discusses the parameters of the work to be performed by IRCA. The contract contains a provision regarding indemnity, which requires IRCA to indemnify WVB from claims that may result from any act, omission, or neglect whether the loss was caused by the negligence of any other person or party, which under the plain language of the contract could include IRCA. Specifically, it states:

> "INDEMNITY
>
> [IRCA] shall, at its own cost and expense, defend, indemnify and save harmless [WVB] and its agents, representatives, officers and employees from any and all loss, claims, liabilities, obligation suits or actions of any kind or character *** and from any and all expense (including costs and attorneys fees) arising from any injury, death or damage which may be sustained, incurred or received by any person *** or property and which may directly or indirectly result from the following:
>
> A. Any act, omission, neglect or misconduct of [IRCA] or any employee or agent of [IRCA] in connection with the performance of any covenant, term or provision of this Agreement, irrespective of whether such loss, claim, liability, obligation, suit, action and/or expense was actually or allegedly caused wholly or in part from the negligence of any other person or party.
>
> ***
>
> C. Any failure, neglect, act or omission on the part of [IRCA] or any employee or agent of [IRCA] with regard to any law, requirement, ordinance or regulation or any governmental authority."

¶ 6        The contract between WVB and Total, dated July 18, 2002, discusses the parameters of the work to be performed by Total. The contract between WVB and Total includes an indemnity provision that is not as broad as the provision in the IRCA contract but that requires Total to indemnify WVB from any claims resulting from the failure or neglect of the employees or agents of Total. Specifically, it states:

> "INDEMNITY
>
> A. To the fullest extent permitted by law, [Total] shall defend, indemnify and save harmless [WVB] and Lender (as hereinafter defined), their respective affiliates, and each of their respective partners, directors, officers, shareholders, agents, employees, consultants, successors in interest and anyone else acting for or on behalf of them (collectively, the 'Indemnities') from and against all damages, costs, liabilities, claims,

loss and expense (including without limitation, attorneys' fees) arising out of or in connection with:

> (I) Any act, omission, neglect or misconduct of [Total] or any employee or agent of [Total] in connection with the Work or performance of any covenant, term or provision of the Contract Documents;
>
> (II) Any failure, neglect, act or omission on the part of [Total] or any employee or agent of [Total] in connection with any law, requirement, ordinance or regulation of any governmental authority;
>
> * * *
>
> F. All indemnities provided in this Agreement shall survive termination of this Agreement."

The contract between WVB and Total also contained the following provision:

> "I. Notwithstanding anything in the Contract Documents to the contrary, [WVB] shall have no responsibility or obligation in connection with safety or the construction means, methods, techniques or procedures in connection with the Work or the acts or omissions of [Total], any other contractors, subcontractors, materialmen or others or any of their agents or employees or others performing the Work."

¶ 7 The condominium building was constructed, containing 10 floors and 180 condominium units, which WVB sold to individual purchasers during and after construction via separate individual purchase contracts. Turnover of the condominium building to the unit-owner elected board, the HOA, occurred on August 22, 2003. In 2006, attorneys for the HOA wrote a letter to the attorneys for WVB and reported water leaking from the roof into common areas and individual units.

¶ 8 On August 8, 2011, the HOA filed a complaint against WVB as the developer of the condominium project; Lennar Chicago, Inc., f/d/b/a Summit Development Corporation, d/b/a Lennar Chicago, as the general contractor allegedly hired by the developer for purposes of selling the units; Glenn Rutledge, Roger Mankedick, and Rosemary Godek as the individual employees of Lennar and members of the HOA until it was turned over to the HOA; IRCA as the roof consultant; and Total as the roof contractor.

¶ 9 In its complaint, the HOA alleged that it notified WVB of the defects now at issue in the lawsuit but that WVB refused to remedy the problems. The HOA alleged: "[a]s a result of [WVB's] refusal to remedy the defects in the roofing system, 933 Van Buren continued to experience water infiltration" and individual unit owners purportedly sustained damages to personal property, causing the HOA to spend $309,000 to fix the water infiltration issues. All of these facts are incorporated into every claim in the complaint.

¶ 10 The original complaint contained the following counts: count I: "Breach of Warranty–West Van Buren"; count II: "Consumer Fraud Pursuant to 815 ILCS 505/10a–West Van Buren"; count III: "Breach of Fiduciary Duty–Rutledge, Mankedick & Godek"; count IV: "Fraud"; and count V: "Breach of Implied Warranty of Habitability."

¶ 11 Count I, "Breach of Warranty" against WVB, contains the following allegations that are relevant here:

> "45. Each contract contained a Limited Warranty Statement wherein [WVB] warranted against any defects in material and workmanship in the common elements of the Condo Building.

46. [WVB] breached their Condominium Purchase Agreements with individual Unit owners by failing to complete the scope of its contract including, but not limited to:

(a) the failure to properly install the roofing system; and

(b) the failure to correct the defective roofing system;

47. In addition, [WVB] breached the Warranty by, among other things:

(a) failing to disclose all material, hidden and latent defects that existed prior to the execution of the Condominium Purchase Agreements;

(b) fraudulently covering up hidden and latent defects."

¶ 12 Count II, "Consumer Fraud Pursuant to 815 ILCS 505/10a," and count IV, "Fraud," both allege claims arising out of WVB's knowledge of defects and failure to disclose the defects in the roof to the HOA and individual unit purchasers. Both count II and count IV list a number of representations that were falsely made to the purchasers as well as a number of facts that were concealed from the purchasers. Both counts conclude that "As a result of [WVB's] intentional misrepresentations and concealments and the reliance upon those misrepresentations, 933 Van Buren has suffered damages in excess of $300,000.00 in costs to remediate the defective roofing system."

¶ 13 Count V, "Breach of Implied Warranty of Habitability," contains the following allegations that are relevant here:

"75. [WVB] was the identified developer of the Condo Building.
***

77. IRCA provided the specifications for the deck waterproofing and roofing that was found to be defective.

78. [Total] provided roofing services on the Project and was involved with the installations of the roofing system at the Condo Building.

79. [WVB], Lennar, IRCA, and [Total] constructed the property with defects which caused water infiltration into common areas of the Condo Building as well as individual Units—a) [WVB] was the identified developer on the Project. [WVB] was responsible for delivering a new residential condominium building free of any defects. [WVB] instead delivered a defective building; b) Lennar was the general contractor on the Project. As such, Lennar was responsible for the installation of the roofing system and its component parts that were defective; c) IRCA was responsible for the specifications for the deck waterproofing and roofing. The plans provided by IRCA were insufficient to prevent water infiltration into the Condo Building; and d) [Total] failed to properly install sections of the roof which resulted in water infiltration into the Condo Building."

¶ 14 The second amended complaint and the third amended complaint, filed October 17, 2012, and November 11, 2013, respectively, contained the same counts as the original complaint and an additional count, count VI: "Negligence IRCA." The second and third amended complaints also contain all the allegations laid out above that were contained in the original complaint.

¶ 15 Attached to the complaints is an expert report from R.J.K. Engineering relating to the defects in the roof that led to the water infiltration. The report states that the section of the roof below the patio pavers "was never flooded with Type IV hot asphalt and roof gravel was never installed over it." The report goes on to note that "the roof system was never completed under

the patio concrete pavers and top layer of fiberglass was never coated with hot asphalt. Consequently, any water that accumulated over the roof membrane for a long period of time had caused water bleeding through the existing roof membrane and has caused water presence throughout entire area under the patio." The HOA also attached to the complaint a report from Architectural Consulting Group, Ltd., which tested samples of the roof and reported that its "[r]eview of the samples disclosed minimal inter-ply mopping at various points between the roofing felts."

¶ 16    On October 3, 2011, WVB filed a one-count counterclaim against both IRCA and Total seeking indemnification from IRCA and Total and alleging that IRCA and Total were responsible for the defects in the roof for which it was being sued. The counterclaim attached the contracts WVB entered into with IRCA and Total. With respect to the first count in WVB's counterclaim against IRCA, WVB states:

> "9. Pursuant to the contract between WVB and IRCA, IRCA was required to provide its roof consulting work in connection with the construction of the Building in a good and workmanlike manner with the degree of skill and expertise expected of all similar roofing consultants.
>
> 10. [The HOA's] complaint seeks to hold WVB liable for defects in the design and/or construction of the roof and the Building, which allegedly caused water intrusion and other damages to the Building and personal property within.
>
> 11. WVB denies that it breached any duty which it may be found to have owed [the HOA], and denies that it has any liability of fault for the damages claims in [the HOA's] complaint."

WVB then cites the indemnity provisions contained in the contract between WVB and IRCA and goes on to claim:

> "13. In the event WVB is found liable to [the HOA] on the claims in its Complaint, any such liability is due to the defective nature of the roof consulting services provided by IRCA, which constitutes a breach of contract between WVB and IRCA, and for which IRCA is required to indemnify WVB to the extent of any judgment entered against WVB plus attorney fees, costs, and expenses incurred by WVB in defending this matter."

With respect to the first count in WVB's counterclaim against Total, WVB similarly states:

> "16. Pursuant to the contract between [Total] and WVB, [Total] was required to provide roof installation work in connection with the construction of the Building in a good and workmanlike manner free from defects and with the degree of skill and expertise expected of roofers.
>
> 17. [The HOA's] complaint seeks to hold WVB liable for defects in the design and/or construction of the roof and the Building, which allegedly caused water intrusion and other damages to the Building and personal property within.
>
> 18. WVB denies that it breached any duty which it may be found to have owed [the HOA], and denies that it has any liability of fault for the damages claims in [the HOA's] complaint."

WVB then cites the indemnity provisions contained in the contract between WVB and Total and goes on to claim:

"20. In the event WVB is found liable to [the HOA] on the claims in its Complaint, any such liability is due to the defective nature of the roofing work provided by [Total], which constitutes a breach of contract between WVB and [Total], and for which [Total] is required to indemnify WVB to the extent of any judgment entered against WVB plus attorney fees, costs, and expenses incurred by WVB in defending this matter."

¶ 17 On the same date, October 3, 2011, WVB moved to dismiss all claims asserted against it by the HOA in a combined section 2-619.1 motion pursuant to the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2010)). Rather than ruling immediately, the circuit court allowed limited written and oral discovery while WVB's motion remained pending.

¶ 18 On June 29, 2012, Total filed a counterclaim against WVB and IRCA, which sought contribution pursuant to the Joint Tortfeasor Contribution Act (Contribution Act). 740 ILCS 100/3 (West 2012). On October 17, 2012, the circuit court dismissed Total's contribution claims, finding that the HOA did not seek damages for a tort against Total to which the Contribution Act would apply since the HOA only sought contract-based economic loss damages.

¶ 19 On October 18, 2012, following limited discovery, WVB refiled its motion to dismiss the HOA's second amended complaint as a section 2-615 motion, and the circuit court held three hearings on that motion to dismiss. First, the circuit court dismissed count V (breach of the implied warranty of habitability) against WVB with prejudice because that warranty had been validly waived in the individual unit purchase contracts. After continuing the hearing for a second day, the HOA moved to reconsider the dismissal of count V against WVB. At the next hearing, the court granted the HOA's motion to reconsider in part, converting its dismissal of count V to one without prejudice. The court then dismissed without prejudice count I (breach of express warranty) and the two fraud counts against WVB, finding that they were insufficiently pled. At the final hearing, the court reinstated its dismissal with prejudice of count V, confirming that the disclaimer of the implied warranty of habitability in the unit purchaser contracts barred that claim entirely.

¶ 20 On November 25, 2013, the HOA filed its third amended complaint, which reasserted all the claims that have previously been filed: count I: "Breach of Warranty–West Van Buren"; count II: "Consumer Fraud Pursuant to 815 ILCS 505/10a–West Van Buren"; count III: "Breach of Fiduciary Duty–Rutledge, Mankedick & Godek"; count IV: "Fraud"; count V: "Breach of Implied Warranty of Habitability"; and count VI: "Negligence IRCA."

¶ 21 Shortly thereafter, and before any responsive pleadings to the third amended complaint had been filed, the HOA agreed to voluntarily dismiss its claims against WVB as part of a settlement agreement, and on February 20, 2014, a "Stipulation of Dismissal with Prejudice" was entered. A settlement payment was made to the HOA on behalf of WVB, Lennar, and the individual defendants without allocation. The HOA's third amended complaint therefore remained pending against IRCA and Total. On October 20, 2014, the HOA's third amended complaint was dismissed for want of prosecution.

¶ 22 On February 21, 2014, WVB filed a motion for partial summary judgment on counts I and II of its counterclaim against IRCA and Total. IRCA and Total responded to WVB's partial motion for summary judgment and also filed cross-motions for summary judgment against WVB.

¶ 23 On August 11, 2014, the circuit court denied WVB's partial motion for summary judgment and granted IRCA's and Total's motions for summary judgment "relating to indemnification

pursuant to the individual agreements." In that written order, the circuit court judge made the following comments:

> "[I]t is apparent to this Court that the [HOA] sought to recover against [WVB] for its failure to disclose the latent defects in the roofing system which permitted water to infiltrate the building, causing damage. Further, [the HOA's] fraud claims arise not out of any physical act undertaken by [WVB], but again by [WVB's] alleged concealment through omission of their knowledge and existence of certain defects in the roofing system. Thus, it is evident that [WVB's] damages arise out of its dealings with [the HOA] and only tangentially relate to the arguments between [WVB], IRCA, and Total. Further, even if the relevant damages were somehow attributable to [WVB's] individual agreements with IRCA and Total, it is apparent that the [Construction Contract Indemnification for Negligence Act] precludes [WVB's] recovery for its damages, including the asserted costs and attorneys' fees. 740 ILCS 35/1."

The circuit court found that the Construction Contract Indemnification for Negligence Act (Act) (740 ILCS 35/1 *et seq.* (West 2012)) "clearly applies to the agreements considered herein" as they were for construction. The court found that the indemnification provisions in WVB's contracts with IRCA and Total "can still be enforceable *** under the Illinois Contribution Act" but since no claims remained pending against WVB, and because the HOA's "claims against [WVB] stem from the alleged individual conduct of [WVB], and not together with any action by Total, or IRCA, recovery by [WVB] under the Joint Tortfeasors Contribution Act is inappropriate. Rather, it would appear that [WVB's] claims are better suited under breach of contract theory as to the workmanship or warranty of Total, and IRCA. Such claims are currently not before the court, and therefore warrant no consideration."

¶ 24    WVB timely appealed the circuit court's ruling on its partial motion for summary judgment. Total cross-appealed the dismissal of its counter-complaint against WVB and IRCA, which argued that the HOA's claim of implied warranty of habitability gives rise to a cause of action for joint tortfeasor contribution.

¶ 25                                    II. Analysis

¶ 26    WVB appeals the circuit court's entry of summary judgment in favor of IRCA and Total and against WVB on WVB's counterclaims. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Id.* Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. *Id.* We may affirm a trial court's grant of summary judgment on any basis apparent in the record, regardless of whether the trial court relied on that basis or whether the court's reasoning was correct. *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 31-32 (2006). In appeals from summary judgment rulings, we conduct a *de novo* review. *Outboard Marine Corp.*, 154 Ill. 2d at 102.

¶ 27    WVB argues that the trial court erred in denying its partial motion for summary judgment because "IRCA and Total breached their contractual duties to defend and indemnify WVB against [the HOA's] claims" where WVB proved the existence of contracts between the parties, both of which contained indemnification provisions, a breach of those contracts where IRCA and Total refused to defend and indemnify WVB, and damages in the amount that it cost

WVB to defend against the HOA's claims and pay a settlement agreement with the HOA. WVB also argues that the trial court erred in finding that the HOA's claims arose out of its dealing with WVB, rather than IRCA or Total, where WVB took no part in any of the work on the condominium building, where IRCA was responsible for the specifications of the roof construction and Total was responsible for the actual construction of the roof, and where the HOA's claims necessarily required proof that Total and IRCA performed "shoddy" work on the roof. WVB argues that the HOA's allegations relating to WVB's concealment of the problems with the roof were "mere surplusage irrelevant to the [HOA's] claims for breaches of express and implied warranties, and the circuit court should not have relied on those allegations in determining whether the [HOA's] claims triggered IRCA's and Total's duties to defend and indemnify." WVB further argues that the trial court erred in finding, in the alternative, that WVB's indemnity claims were barred under the Act (740 ILCS 35/1 (West 2012)), where the HOA never claimed that WVB's negligence caused the water damage and where the underlying cases did not involve any claims of personal injury. Last, WVB argues that even if the trial court was correct in denying its partial motion for summary judgment as to the indemnification claims, WVB also asserted breach of contract claims against IRCA and Total for the defective work they performed on the roof, and the trial court judge never addressed those claims.

¶ 28                          A. WVB's Counterclaims Against IRCA and Total

¶ 29     Preliminarily, we note that WVB argues on appeal that its "counterclaims are based [not only] on the explicit defense and indemnity language in contracts with [Total] and IRCA, [but also on] the existence of defective work, which constitutes an independent breach of contract." However, we find that independent breach of contract claims against IRCA and Total for defective work were never before the trial court, and therefore, the only counterclaims WVB had against IRCA and Total are counterclaims for the breach of the indemnification clauses in their respective contracts.

¶ 30     First, we find WVB did not properly plead two causes of action. Pursuant to section 2-603 of the Code (735 ILCS 5/2-603 (West 2012)), "[e]ach separate cause of action upon which a separate recovery might be had shall be stated in a separate count or counterclaim, as the case may be and each count, counterclaim, defense or reply, shall be separately pleaded, designated and numbered, and each shall be divided into paragraphs numbered consecutively, each paragraph containing, as nearly as may be, a separate allegation." Here, WVB only had one counterclaim against IRCA and one counterclaim against Total in which WVB focused on the breach of the indemnity provisions of the contracts.

¶ 31     Assuming *arguendo* defective work counterclaims were before the trial court, any breach of contract claims for faulty construction work that WVB may have had against IRCA and/or Total were time-barred when WVB filed its counterclaims. The breach of construction contract claims is governed by the 4-year limitations period applicable to construction contracts rather than the 10-year limitations period applicable to other written agreements. 735 ILCS 5/13-214(a) (West 2012); 735 ILCS 5/13-206 (West 2012). WVB discovered the leaks in 2006 when it received letters from the HOA about the leaking roof. Therefore, any alleged breach of contract counterclaims are time-barred by the four-year statute of limitations applicable to construction-related matters because they were not filed until 2011. 735 ILCS 5/13-214 (West 2012) ("Actions based upon tort, contract or otherwise against any person for an act or

omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission."). Accordingly, even if WVB's counterclaims against IRCA and Total could be interpreted as also including breach of contract claims for faulty work on the roof, which we find they do not, those claims are time-barred and were properly dismissed. Accordingly, the only viable counterclaims before us are WVB's counterclaims arising out of breaches in its indemnification agreements with IRCA and Total.

¶ 32                         B. Construction Contract Indemnification for Negligence Act

¶ 33     Before we can determine whether IRCA or Total had a duty to defend and indemnify WVB pursuant to their respective indemnification agreements, we must first determine whether those indemnification provisions were valid or whether they were void under the Act. The Act states that construction contracts or agreements that promise to indemnify a party from its own negligence are void:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." 740 ILCS 35/1 (West 2012).

¶ 34                                         i. IRCA

¶ 35     The indemnification provision in the contract between WVB and IRCA states that IRCA is responsible to indemnify WVB from claims which may result from any act, omission or neglect where the loss or claim was caused by the negligence of any other person or party:

> "INDEMNITY
>
> [IRCA] shall, at its own cost and expense, defend, indemnify and save harmless [WVB] and its agents, representatives, officers and employees from any and all loss, claims, liabilities, obligation suits or actions of any kind or character *** and from any and all expense (including costs and attorneys fees) arising from any injury, death or damage which may be sustained, incurred or received by any person *** or property and which may directly or indirectly result from the following:
>
> A. Any act, omission, neglect or misconduct of [IRCA] or any employee or agent of [IRCA] in connection with the performance of any covenant, term or provision of this Agreement, irrespective of whether such loss, claim, liability, obligation, suit, action and/or expense was actually or allegedly caused wholly or in part from the negligence of any other person or party."

¶ 36     While the clause in the WVB/IRCA contract could be construed as indemnifying WVB from any party's negligence, which could include the negligence of itself, we find that this does not automatically require us to find the provision void under the Act as "the literal terms of a contract are not necessarily dispositive on the issue of whether it is void under the Construction Contract Indemnification for Negligence Act." *Liccardi v. Stolt Terminals, Inc.*, 178 Ill. 2d 540, 548-50 (1997). As a general principle of contract law, statutes and laws in

- 10 -

existence at the time a contract is executed are considered part of the contract. *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217 (1997). It is presumed that parties contract with knowledge of the existing law. *Id.* Additionally, we recognize that a construction of a contract which renders the agreement enforceable rather than void is preferred. *Id.*

¶ 37  In *Braye*, we emphasized that a contract should not be deemed illegal unless it is expressly contrary to the law or public policy. *Id.* at 216. The law and the public policy of Illinois permit and require that competent parties be free to contract with one another. *Id.* Whether a contract violates public policy depends on the peculiar facts and circumstances of each case, as well as the language of the contract itself. *Id.* In addition, "a construction of a contract which renders the agreement enforceable rather than void is preferred." *Id.* at 217.

¶ 38  Because there is nothing in the record to suggest that WVB construed the indemnification provision as relieving it of liability for its own acts or omissions, "that paragraph did not extinguish [WVB's] incentive to exercise due care, and the primary purpose behind the Construction Contract Indemnification for Negligence Act was not implicated." *Liccardi*, 178 Ill. 2d at 550. Therefore, we will interpret the contract in a manner that renders the agreement enforceable rather than void and find that WVB did not expressly require that it be indemnified for its own negligence. Accordingly, the indemnity clause is not void under the Act and can be invoked by WVB to seek indemnification from IRCA for faulty roof work. See *id.*; *Braye*, 175 Ill. 2d at 217-18.

¶ 39                                               ii. Total

¶ 40  The indemnity provision in the contract between WVB and Total is different from the indemnity provision found in the contract between WVB and IRCA because under the agreement Total was required to indemnify WVB only from the negligence of Total employees and agents (as opposed to the language in the IRCA contract, which requires indemnity from negligence, regardless of origin):

> "A. To the fullest extent permitted by law, [Total] shall defend, indemnify and save harmless [WVB] and Lender (as hereinafter defined), their respective affiliates, and each of their respective partners, directors, officers, shareholders, agents, employees, consultants, successors in interest and anyone else acting for or on behalf of them (collectively, the 'Indemnities') from and against all damages, costs, liabilities, claims, loss and expense (including without limitation, attorneys' fees) arising out of or in connection with:
>
> > (I) Any act, omission, neglect or misconduct of [Total] or any employee or agent of [Total] in connection with the Work or performance of any covenant, term or provision of the Contract Documents[.]"

¶ 41  Based on our plain reading of the language in the indemnity provision between WVB and Total, we find that the provision does not violate the Act as it does not allow WVB to seek indemnification from Total based on its own negligence or wrongdoing. *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 308 (2008) (the cardinal rule of contract interpretation is to discern the parties' intent from the contract language). Rather, the indemnification clause only allows WVB to be indemnified for "any act, omission, neglect or misconduct of Total or any employee or agent of Total" in connection with the work it was contracted to perform. Such indemnification does not violate the Act. See 740 ILCS 35/1 (West 2012).

- 11 -

¶ 42                              C. Duty to Defend and Indemnify

¶ 43        We find that the indemnification clauses in the contracts between WVB and IRCA and
WVB and Total are not void under the Act and are enforceable. We must now determine
whether IRCA and Total breached their duty to defend and indemnify WVB with respect to the
HOA's underlying lawsuit pursuant to the respective indemnification clauses in their
contracts. An indemnity agreement is a contract and is subject to contract interpretation rules.
*Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). The
cardinal rule of contract interpretation is to discern the parties' intent from the contract
language. *Buenz*, 227 Ill. 2d at 308. Where the contract language is unambiguous, it should be
given its plain and ordinary meaning. *Id.* In interpreting a contract for indemnity, the courts
must give the agreement a fair and reasonable interpretation based upon a consideration of the
agreement as a whole. *Allen v. International Harvester Co.*, 212 Ill. App. 3d 655, 658 (1991).
"While the indemnity provision must be strictly construed [citation], each case also depends
upon the language and facts of that particular case." *Id.*

¶ 44        Preliminarily, Total argues, and IRCA joins in that argument, that the indemnification
clauses are subject to the four-year limitations period applicable to construction contracts. 735
ILCS 5/13-214(a) (West 2012). We disagree. WVB's claims against Total and IRCA arise out
of written contractual indemnification clauses, and therefore, those claims are not time-barred
as they are subject to the 10-year statute of limitations clause applicable to written contracts.
See *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461 (2008) (finding that 10-year
statute of limitations applied to claims arising out of a written indemnification clause); *15th
Place Condominium Ass'n v. South Campus Development Team, LLC*, 2014 IL App (1st)
122292, ¶ 46 (holding that a written agreement to indemnify contained in a construction
contract was not one of the activities protected under the 4-year statute of limitations
applicable to construction matters and was instead subject to the 10-year statute of limitations
applicable to written contracts). As such, WVB's indemnification counterclaims against Total
and IRCA are not time-barred.

¶ 45        In the underlying action filed by the HOA, the HOA made the following allegations: count
I: "Breach of Warranty–West Van Buren"; count II: "Consumer Fraud Pursuant to 815 ILCS
505/10a–West Van Buren"; count III: "Breach of Fiduciary Duty–Rutledge, Mankedick &
Godek"; count IV: "Fraud"; count V: "Breach of Implied Warranty of Habitability"; and count
VI: "Negligence IRCA."


¶ 46                                      i. Fraud Claims

¶ 47        With respect to the HOA's fraud claims against WVB, we find that those claims against
WVB fall outside the scope of the plain language of the indemnification clauses between WVB
and Total and WVB and IRCA because those claims arise out of WVB's alleged intentional
misconduct for allegedly concealing construction defects from the buyers of the condominium
units. Therefore, because these claims arose out of the alleged tortious conduct of WVB, rather
than damage for construction defects, IRCA and Total did not breach their contract by refusing
to defend WVB against those claims. Count II, "Consumer Fraud Pursuant to 815 ILCS
505/10a," and count IV, "Fraud," both allege claims arising out of WVB's failure to disclose
the defects in the roof to the HOA and individual unit purchasers. Both count II and count IV
list a number of representations that were falsely made to the purchasers as well as a number of
facts that were concealed from the purchasers. Both counts conclude: "As a result of [WVB's]

*intentional* misrepresentations and concealments and the reliance upon those misrepresentations, 933 Van Buren has suffered damages in excess of $300,000.00 in costs to remediate the defective roofing system." (Emphasis added.) As such, the HOA's fraud claims against WVB arise out of alleged intentional conduct rather than any negligent conduct.

¶ 48    The indemnification clause between WVB and Total does not require Total to defend WVB for any claims arising in part or in total from WVB's negligence or wrongdoing; rather, it only provides a duty to defend where Total or its agents are negligent or engage in wrongdoing. The foundation of the HOA's fraud claims require a showing that WVB knew of the roof defects and WVB concealed the defects from the homeowners. As such, Total did not breach the indemnification agreement with WVB when it refused to defend WVB against the HOA's fraud claims as those claims fell outside the scope of the indemnification provision. *Buenz*, 227 Ill. 2d at 308 (the cardinal rule of contract interpretation is to discern the parties' intent from the contract language).

¶ 49    Similarly, the indemnification clause between WVB and IRCA required IRCA to defend, indemnify, and hold harmless WVB "from any and all expense (including costs and attorneys fees) arising from any injury, death or damage which may be sustained, incurred or received by any person *** or property and which may directly or indirectly result from the following: *** Any act, omission, neglect or misconduct of [IRCA] or any employee or agent of [IRCA] in connection with the performance of any covenant, term or provision of this Agreement, irrespective of whether such loss, claim, liability, obligation, suit, action and/or expense was actually or allegedly caused wholly or in part from the negligence of any other person or party." As such, IRCA only agreed to defend and indemnity WVB for its own acts or omissions or damages that occurred as a result of another party's negligence. Because the HOA's fraud claims allege that WVB intentionally made misrepresentations and intentionally concealed information from purchasers, IRCA did not breach the indemnification agreement with WVB when it refused to defend WVB against the HOA's fraud claims as those claims fell outside the scope of the indemnification provision. *Buenz*, 227 Ill. 2d at 308 (the cardinal rule of contract interpretation is to discern the parties' intent from the contract language).

¶ 50                                    ii. Warranty Claims

¶ 51    With respect to the HOA's breach of warranty and breach of the implied warranty of habitability claims against WVB, we find that those claims triggered IRCA's and Total's duties to defend. *Jandrisits v. Village of River Grove*, 283 Ill. App. 3d 152, 158 (1996) ("the existence of a duty to defend a complaint arising from an indemnity agreement is determined solely from the allegations of the complaint and the agreement"). The HOA's breach of warranty claim against WVB, in relevant part, alleges that the defects in the roof construction are the cause of their damages and their reason for filing the lawsuit:

> "45. Each contract contained a Limited Warranty Statement wherein [WVB] warranted against any defects in material and workmanship in the common elements of the Condo Building.
>
> 46. [WVB] breached their Condominium Purchase Agreements with individual Unit owners by failing to complete the scope of its contract including, but not limited to:
>
> > (a) the failure to properly install the roofing system; and

- 13 -

(b) the failure to correct the defective roofing system[.]"

¶ 52    The HOA's breach of the implied warranty of habitability claim against WVB, in relevant part, alleges:

"75. [WVB] was the identified developer of the Condo Building.
***

77. IRCA provided the specifications for the deck waterproofing and roofing that was found to be defective.

78. [Total] provided roofing services on the Project and was involved with the installations of the roofing system at the Condo Building.

79. [WVB], Lennar, IRCA, and [Total] constructed the property with defects which caused water infiltration into common areas of the Condo Building as well as individual Units—a) [WVB] was the indentified developer on the Project. [WVB] was responsible for delivering a new residential condominium building free of any defects. [WVB] instead delivered a defective building; b) Lennar was the general contractor on the Project. As such, Lennar was responsible for the installation of the roofing system and its component parts that were defective; c) IRCA was responsible for the specifications for the deck waterproofing and roofing. The plans provided by IRCA were insufficient to prevent water infiltration into the Condo Building; and d) [Total] failed to properly install sections of the roof which resulted in water infiltration into the Condo Building."

We find that these allegations, which arise out of faulty work on the roof, fall within the scope of both indemnification clauses, thus triggering IRCA's and Total's duties to defend with respect to these claims.

¶ 53    WVB's contract with Total provides that Total will defend, indemnify, and save harmless WVB from any acts, omissions, neglect, or misconduct by Total or any employee or agent of Total that results in damages, costs, liabilities, claims, losses, and expenses in connection with the work Total was contracted to do. As such, because it is undisputed that Total was contracted to perform the work on the roof, it follows that the HOA's claim for breach of warranty and breach of the implied warranty of habitability arising out of faulty work on the roof falls within the scope of the indemnification agreement that WVB entered into with Total.

¶ 54    Similarly, we find that under the plain language of the indemnity provision between WVB and IRCA, IRCA had a duty to defend and indemnify WVB with respect to the negligence and breach of the implied warranty of habitability claims filed by the HOA. The indemnification clause clearly states that IRCA will "defend, indemnify and save harmless" WVB "from any and all expense (including costs and attorneys fees) arising from any injury, death or damage which may be sustained, incurred or received by any person *** or property and which may directly or indirectly result from the following: *** Any act, omission, neglect or misconduct of [IRCA] or any employee or agent of [IRCA] in connection with the performance of any covenant, term or provision of this Agreement, irrespective of whether such loss, claim, liability, obligation, suit, action and/or expense was actually or allegedly caused wholly or in part from the negligence of any other person or party." The HOA's claims of negligence and breach of the implied warranty of habitability clearly fall within this provision as the claims arise out of the faulty work done on the roof.

¶ 55    We recognize that Total argues at some length that WVB's counterclaims against it are time-barred under the two-year limitations period in section 13-204(c) of the Code (735 ILCS 5/13-204(c) (West 2012)), a limitations statute that it argues was not addressed in *15th Place Condominium, LLC*, 2014 IL App (1st) 122292. However, section 13-204(c) applies to tort contribution claims arising out of implied indemnity. See 735 ILCS 5/13-204(c) (West 2012). Here, like in *15th Place Condominium*, WVB's counterclaims against Total arise out of breach of contract and specifically the breach of a written indemnification clause in a contract. As such, the statute of limitations applicable to WVB's counterclaims for indemnification is the 10-year statute of limitations period applicable to written contracts. See 735 ILCS 5/13-206 (West 2012) ("Except as provided in Section 2-725 of the 'Uniform Commercial Code', actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing and actions brought under the Illinois Wage Payment and Collection Act shall be commenced within 10 years next after the cause of action accrued ***.").

¶ 56    Although we recognize IRCA's argument that all of the counts in the HOA's complaints incorporate all the facts alleged in the factual background of the complaints, which include facts pertaining to WVB's alleged concealment of the latent defects from the unit owners, we find this carries little weight given that facts regarding any alleged concealment are not necessary to prove the warranty claims. We would further point out that the facts regarding concealment are also incorporated into the negligence claims against IRCA and, again, are not necessary to prove a claim of negligence against IRCA.

¶ 57    Also, while the trial court did not consider the claim for the breach of implied warranty of habitability because it was not pending at the time of the summary judgment ruling, we note that claim was only dismissed after WVB had attorneys defend against the claim and file motions to have it dismissed pursuant to the unit owners' agreements. The duty to defend is triggered by the allegations in the complaint, regardless of whether those claims may be dismissed later. *Jandrisits*, 283 Ill. App. 3d at 158 ("the existence of a duty to defend a complaint arising from an indemnity agreement is determined *solely from the allegations of the complaint* and the agreement" (emphasis added)). Therefore, we find Total had a duty to indemnify WVB against those claims.

¶ 58    Further, we find that Total's argument that the implied warranty of habitability is a tort claim has no merit. Our supreme court found that the warranty of habitability arises out of contract law: "we hold that included in the contracts, both oral and written, governing the tenancies of the defendants in the multiple unit dwellings occupied by them, is an implied warranty of habitability which is fulfilled by substantial compliance with the pertinent provisions of the Chicago building code." *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 366 (1972). The implied warranty of habitability has been expanded to include owners who contract for the purchase of homes as well as tenants. *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 404 Ill. App. 3d 611, 616 (2010). Total has not cited any cases showing that the implied warranty of habitability is a tort, and we cannot find any. Thus, we find Total's claim to be meritless; the claim at issue in this case, based on the implied warranty of habitability, is a contract claim and Total is obligated to defend and indemnify WVB under its contract.

¶ 59    Last, while WVB argues that where there is a duty to indemnify one claim in the HOA's complaints, there is a duty to defend all of the HOA's claims, WVB relies on case law interpreting insurance contracts and insurance companies. When dealing with indemnification

clauses between noninsurers, our courts do not apply laws that govern insurance contracts. *Ervin v. Sears, Roebuck & Co.*, 127 Ill. App. 3d 982, 989-90 (1984) (unlike insurance policies, which are subject to a general rule of liberal construction in favor of the insured, indemnity agreements are sufficiently disfavored that they must be strictly construed). Accordingly, we find that Total breached its indemnification agreement with WVB when it refused to defend WVB against the HOA's claims for breach of warranty and breach of the implied warranty of habitability.

¶ 60                                              III. Conclusion

¶ 61        For the reasons above, we reverse the dismissal of the counterclaims for indemnity against Total and IRCA with respect to the HOA's breach of warranty and breach of implied warranty of habitability claims, and we remand this matter to the trial court to calculate the sum required to indemnify WVB from those claims only. We affirm the judgment of the trial court in all other respects.

¶ 62        Affirmed in part and reversed in part; cause remanded.